# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA-ORLANDO DIVISION

**A & E AUTO BODY, INC. et al.,**                                    **Plaintiffs**

**v.**

**21st CENTURY CENTENNIAL**
**INSURANCE COMPANY, et al.,**                              **Defendants**

Case No.: 6:14-md-2557-Orl-31TBS
ALL CASES
NOTICE

## PLAINTIFFS' SUMMARY OF ARGUMENTS
## MOTION TO DISMISS
## HEARING DATE 14 NOVEMBER, 2014

### Table of Contents

OVERVIEW...........................................................................1.

FEDERAL ANTITRUST ARGUMENTS..................................1.

I.  Initial Pleading Threshold for Antitrust Claims..................2.

II.  Federal Boycotting Claim.....................................................7.

III.  Antitrust "Plus Factors"......................................................9.

IV.  Previous Order Entered by this Court................................10.

V.  Shotgun Pleadings...............................................................11.

VI.  Omission of Particular Facts...............................................14.

       1.     A product or service market that is
          relevant for antitrust purposes...........................14.

       2.     A geographical market that is relevant
          for antitrust purposes .........................................14.

i

3.      Market power in the relevant product/service
        and geographic markets........................................................15.

4.      Barriers to entry..................................................................15.

5.      Wrongful conduct resulting in
        anticompetitive effects.........................................................15.

6.      That the anticompetitive effects
        outweight the pro-competitive benefits................................16.

7.      Antitrust injury or standing.................................................16.

8.      Damages.............................................................................17.

VII. State Law Causes of Action................................................................17.

1.      Quantum meruit, unjust enrichment, quasi-estoppel..........17.

2.      Tortious interference with business prospects....................18.

3.      Conversion.........................................................................21.

4.      State Statutes.....................................................................21.

        a.____Mississippi.................................................................21.

        b.      Tennessee..................................................................24.

        c.      Louisiana...................................................................27.

Conclusion.................................................................................................32.

## OVERVIEW

### FEDERAL ANTITRUST ARGUMENTS

All of the motions challenge the sufficiency of the factual content of the various complaints. Common to all motions to dismiss is the general argument that Plaintiffs have failed to allege sufficient facts to meet the pleading requirements of the *Twombly/Iqbal* line of authority.  Some, though far from all, motions to dismiss allege the absence of specific, particularized facts which, it is argued, must be included in an antitrust complaint in order to meet the pleading sufficiency requirements and the complaints must therefore be dismissed.  Defendants further argue absence of an anti-trust injury and failure to allege the Defendants actions are devoid of pro-competitive benefits as the basis for dismissing the federal boycotting claims in particular.  Defendants also assert Plaintiffs failed to allege facts meeting antitrust "plus factors."

Defendants also argue the complaints are insufficient because this Court has previously dismissed an identical complaint, in essence arguing that constitutes a de facto determination of insufficiency such that all complaints must be dismissed.

The defendants argued the complaint must be dismissed as improper shotgun pleadings.

Defendants argue that each of the various state law causes of action are insupportable for various reasons.  Because the law varies from state to state, a general overview is not efficiently possible but each are discussed below in an appropriate section.

### I.  Initial Pleading Threshold for Antitrust Claims

_____The Defendants argue the Plaintiffs have failed to allege sufficient specific facts–the who, what, where and when–to meet the threshold pleading requirements for antitrust claims.  In the absence of detailed factual pleading, argue the Defendants, the complaints are insufficient and must

be dismissed.  Each defendant cites two Supreme Court cases for this proposition, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In essence, Defendants make the implicit argument antitrust claims must meet the higher specificity pleading requirements of Federal Rule of Civil Procedure 9 claims.

Defendants' arguments on this subject are incorrect.   In fact, these arguments directly contradict the clear and unambiguous language of the cases being cited.    Both of these cases explicitly state the pleading requirements of F.R.C.P. 8,  a short and plain statement of the claim showing the pleader is entitled to relief and giving notice to a defendant of what the claims are and the grounds upon which those claims rest, are wholly applicable to antitrust claims.  *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 677-78.

Both cases clearly and unambiguously state detailed factual pleadings are <u>not</u> required to meet the requirements of F.R.C.P. 8.  *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678.

Both cases do require more than threadbare recitals of the elements of a cause of action and legal conclusions. *Id.*  However, as the Supreme Court pointed out in dicta, this is required for all complaints, regardless of the nature of the claims.  *Twombly*, 550 U.S., FN 3.  In reiterating this standard, the Court cited to a variety of cases involving numerous types of claims:

- *Conley v. Gibson*, 355 U.S. 41 (1957)(class action suit against railway for racial discrimination);[1]
- *Papasan v. Allain*, 478 U.S. 265 (1986)(claim of denial of economic benefits of public school lands).

---

[1]*Conley* included the broad statement that no complaint should be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  The Supreme Court has set this standard aside, in favor of the more the contemporary, "***Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.***"  *Twombly*, 550 U.S. at 563.

- • *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)(employment discrimination claims).
- • *Neitzke v. Williams*, 490 U.S. 319 (1989)(Eighth and Ninth Amendment violations for failing to provide inmate with adequate medical care).
- • *Scheuer v. Rhodes*, 416 U.S. 232 (1974)(Section 1983 claim).

In articulating what is now referred to as the *Twombly* standard, the *Twombly* court made clear the standard is the standard applicable to all causes of action; it is not a special standard applicable only to antitrust claims. The Eleventh Circuit has just as unambiguously recognized this. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Thus, there is no "heightened" pleading standard for antitrust claims. There is only the pleading standards applicable to all claims. The *Twombly* Court, in fact, specifically addressed previous attempts to heighten the pleading requirements based upon individual circumstance and just as specifically rejected those attempts:

> Writing for the unanimous Court, Chief Justice Rehnquist rebuffed the Fifth Circuit's effort to craft a standard for pleading municipal liability that accounted for "the enormous expense involved today in litigation," by requiring a plaintiff to "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity," We found this language inconsistent with Rules 8(a)(2) and 9(b) and emphasized that motions to dismiss were not the place to combat discovery abuse: "In the absence of [an amendment to Rule 9(b)], federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."

*Twombly*, 550 U.S. at 957-58 (internal citations, notations, omitted).

The Supreme Court also noted the heightened pleading particularity requirements of Rule 9 are not subject to unilateral interpretation. "We have recognized that the canon of *expressio unius est exclusio alterius* applies to Rule 9(b)." *Twombly,* 550 U.S. at 576, FN 3.[2] Even more specifically,

---

[2] A maxim of interpretation meaning that the expression of one thing is the exclusion of the other. When certain persons or things are specified in a law, contract or will, an intention to exclude all others

"Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts." *Jones v. Bock*, 549 U.S. 199, 213 (U.S. 2007).

Plaintiffs are therefore not required to set forth specific and detailed facts alleging the who, what, where and when as Defendants have asserted.  Nor is the Court required to accept the Defendants' invitation to reversible error by fashioning a new pleading standard incorporating the particularity requirements of Rule 9 into cases not defined by Rule 9 as within its scope.  In fact, Defendants' arguments are specifically counter to Eleventh Circuit authority, as well as the direct and unambiguous directions of the Supreme Court. See, e.g., *Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 683 (11th Cir. 2001).

Additionally, Courts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant.  See, e.g., *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983).  This is very likely a  practical appreciation of the fact that conspirators are not usually anxious or predisposed to publicize their illegal behavior.

Plaintiffs are not required to allege in the complaint, nor even to prove at trial the existence of explicit agreements between the defendants to conspire or combine in violation of antitrust laws. "It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators." *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939).  See also *United States v. Paramount Pictures, Inc.*, 334 So. 2d 131, 143 (1948)("It is not necessary to find an express agreement in order to find a conspiracy. It is enough that a concert of

_____

from its operation may be inferred.

action is contemplated and that the defendants conformed to the arrangement.") See also, *William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014, 1055-56 (9th Cir. 1982) , *Ball v. Paramount Pictures, Inc.*, 169 F.2d 317, 320 (3RD Cir. 1948) *Ross v. American Express Co.*, 2014 U.S. Dist. LEXIS 50550, *70-71 (S.D.N.Y. 2014).

Thus, Defendants' argument the complaints at issue lack specifics and particularity are without merit.

This disposes of what the Plaintiffs are <u>not</u> required to plead.  What the Plaintiffs <u>are</u> required to set out is equally clear, "[W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.  See also, *Iqbal*, 556 U.S. at 678.

The various complaints more than meet this standard.  At a minimum, each complaint contains the following facts:

- Specific and particular detailed description of the method by which "market rates" are created by State Farm;
- No other Defendant conducts any form of purported "market rate survey;"
- Defendants meet regularly to discuss labor rate and other payments;
- Each of the Defendants have adopted State Farm's labor rate ceiling, calling it the "market rate," either through explicit verbalized statements or implicit action in conformity therewith;
- Each of the Defendants regularly and routinely refuse to pay or pay in full for the same procedures or processes and utilize the same "reasons" for these refusals.  A list of un- or undercompensated processes and procedures is attached to each complaint as Exhibit "3."  Plaintiffs have incurred damages from Defendants' refusal to pay or fully pay for work performed.
- Each of the Defendants regularly and routinely steer or attempt to steer customers away from Plaintiffs' businesses.  Once a customer has identified the Plaintiffs' business as their choice for repairs, the Defendants will provide a list of reasons why

they cannot or should not take their vehicles to that particular shop, including but not limited to:

–The shop takes longer than other shops to make repairs and the customer may run out of rental car coverage, after which the customer will be responsible for rental charges;

–The shop has had complaints made against it, performs poor quality work;

–The shop charges more than any other shop in the area and the customer will be responsible for the additional expenses;

–The insurer cannot guarantee the shop's work as it can at other, preferred shops.

- All of the Defendants utilize the same list of misrepresentations and/or falsehoods to steer customers away from the Plaintiffs' shops;
- All Defendants impose arbitrary caps on paint and materials.
- Each of the Defendants require shops to accept payment for parts purchases at the cheapest amount the part could have been purchased, even if the part was not appropriate for a particular repair and was never used;
- Each of the Defendants require/write estimates for use of used or aftermarket parts even when it is inappropriate, compromise the safety of the vehicle and/or does not return the vehicle to pre-accident condition;
- Each of the Defendants enforce DRP terms against all the Plaintiffs, even those which are not DRP shops;
- The 1963 Consent Decree explicitly prohibits the conduct engaged in by all Defendants;
- In the respective states, the named Defendants collectively control over two-thirds of the insurance market at a minimum. In most instances, the Defendants collectively control over 70 or 80% of the market;
- Insurers have tremendous control over when insureds and claimants take their vehicle for repairs, an economic reality recognized by the courts;

This is a limited recitation of the facts contained in the complaints. Even from this abbreviated version, there are more than sufficient facts alleged to plausibly suggest an agreement: Various Defendants have explicitly stated they will pay no more than State Farm pays and others have implicitly expressed the same by virtue of their respective conduct. The Defendants have acted in uniformity in a manner not rationally related to independent decision-making but is most reasonably interpreted as the expression of an agreement, whether implicit or explicit, on issues of labor rates, parts procurement, parts compensation, paint and materials caps and compensation, the reasons given for failing to pay or fully pay for the same processes or procedures, the misrepresentations and false

statements made by plaintiffs to prospective customers of the Plaintiffs and the uniformity of action in the identical violations of the 1963 Consent Decree terms.

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (U.S. 1974).

Factual allegations set forth in the complaints more than meet the necessary pleading requirements under Rule 8, its interpretive case law, and all other applicable authority. The Defendants' arguments to the contrary are directly contradicted by explicit authority and lack all merit.

## II.  Federal Boycotting Claim

The Defendants assert the complaints must be dismissed as to the Federal boycotting claim because the plaintiffs have failed to allege sufficient facts to establish an antitrust injury and failed to exclude pro-competitive benefits flowing from Defendants' pattern and practice of behavior.  The defendants also misrepresent the definition and elements of a federal antitrust boycotting claim.

As was set out in the various complaints, "Boycott" has been defined within the antitrust law context as "pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541 (1978).

In the present case, the plaintiffs have alleged more than sufficient facts to meet this definition. The complaints set forth the following: the defendants have intentionally made misrepresentations regarding the quality, timeliness, efficiency, cost and warrantability of plaintiffs' services to members of the public who identified the Plaintiffs' business as their preferred repair facility; the purpose of these misrepresentations and false statements was to enlist innocent third persons to withhold patronage from the plaintiffs' businesses, punish the Plaintiffs for refusing to

comply with the arbitrary fixed price ceilings imposed by the Defendants and direct those third parties to shops compliant with the Defendants' fixed prices.

These are more than sufficient facts to establish a plausible inference of boycotting by the defendants.

With respect to the argument that Plaintiffs' have failed to establish an anti-trust injury, the defendants' position is equally without factual basis. Antitrust injury is injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109 (U.S. 1986).

In the complaints filed in this case, Plaintiffs have set forth the following facts: Defendants have deliberately and willfully made misrepresentations regarding the quality, timeliness, efficiency, cost, and warrantability of plaintiffs' services to members of the public who identified the Plaintiffs' business as their preferred repair facility; the purpose of these misrepresentations and false statements was to enlist innocent third persons to withhold patronage from the plaintiffs' businesses, punish the Plaintiffs for refusing to comply with the arbitrary and self-determined fixed price ceilings imposed by the Defendants and direct those third parties to shops compliant with the Defendants' fixed prices.

The effect of these actions has been to effectively eliminate competition within the collision repair industry. Plaintiffs are not free to raise or lower their prices, adjust business practices to accommodate broader economic conditions, or in any way maintain full and complete control over those business practices. Defendants' actions have also had the effect of eliminating the competitive incentive of quality. In the world the Defendants have created through their illegal conduct, the worst repair is paid exactly the same as the best.

These facts are more than sufficient to meet the pleading requirements of an antitrust injury due to Defendants' illegal boycotting.

Defendants' also argue that plaintiffs have failed to allege the Defendants' actions are void of redeeming pro-competitive virtues. Respectfully, the plaintiffs are not required to either plead this. Once the plaintiffs have met their initial burden, the burden shifts to the defendant to offer evidence of a pro-competitive redeeming virtue. See, e.g., *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 543 (2d Cir. N.Y. 1993). See also, *Ark. Carpenters Health & Welfare*

*Fund v. Bayer AG*, 604 F.3d 98 (2d Cir. N.Y. 2010), *K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 1994 U.S. Dist. LEXIS 7253 (S.D.N.Y. June 1, 1994).

Defendants' arguments are therefore without legal or factual basis.

### III.  Antitrust "Plus Factors"

_____Although utilizing various descriptions, all of the defendants assert the motions to dismiss must be granted because the plaintiffs' complaints fail to sufficiently allege required antitrust "plus factors."

This argument can only succeed if one is willing to read out the entirety of the facts section of the various complaints.

Plaintiffs asserting conscious parallelism as part of their antitrust violation claims must generally also provide contextual facts referred to as a "plus factors." *Williamson Oil Co. v. Phillip Morris U.S.A.* 346 F.3d 1287, 1301 (11th Cir. 2003).

There is no definitive or exclusive list of plus factors.  "[A]ny showing by appellants that "tends to exclude the possibility of independent action" can qualify as a "plus factor." *Id.*  Some examples of this include (1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the Defendant acted contrary to its interests; or (3) evidence implying a traditional conspiracy. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 321-22 (3rd Cir. 2010) .

According to the Supreme Court, plus factors include parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties. *Twombly*, 550 U.S. at 557, FN4 (citing 6 Areeda & Hovenkamp P 1425, at 167-185).

In the present cases, the Plaintiffs have alleged numerous facts, which taken collectively or independently, constitute a showing of facts tending to exclude the possibility of independent action. The complaint alleges the defendants had a clear and unequivocal motive for their illegal actions, profit.  The complaint also alleges several instances that cannot, rationally, be attributed to chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by advance understanding among the parties.  As noted in previous filings to this court, the only manner in which

independent decision-making could produce the unity and uniformity of action by the defendants would be if all the defendants' employees spontaneously developed psychic powers such that each one independently was able to discern the labor rate State Farm and other defendants pay, the processes and procedures for which State Farm and other defendants pay, the processes and procedures which State Farm and other defendants refuse to pay, the reasons for the refusal to pay for processes and procedures given by State Farm and other defendants, the misrepresentations and fabrications given by State Farm and other defendants to accomplish steering customers to other businesses, and a host of other facts.

In the absence of agreement, it is simply not rational nor plausible for this court to infer each and every defendant could have reached the independent decision to act in exactly the same way as every other defendant all without knowledge the other defendants were, in fact, behaving in an identical manner.

The complaint therefore asserts many facts which qualify as "plus factors." The plaintiffs have met their pleading burden and the defendant's arguments to the contrary are without factual or legal merit.

### IV.  Previous Order Entered by this Court

In June, 2014, this court entered an order in the Florida Action directing the plaintiffs to amend the complaint by a date certain. If the plaintiffs failed to file an amended complaint by that date certain, the cause of action would stand dismissed.  The plaintiffs did file an amended complaint and the case has proceeded forward since that date. At no time was the cause of action ever dismissed by this court. The case has remained active since its inception.

The changes to the complaints were requested by the Court included the following: clarification of the statement of jurisdiction; clarification of the domicile state of the defendants; removal of incorporation by reference of preceding paragraphs, replacement of the inclusive term "defendants" with the proper name of each defendant in every instance where the inclusive term had previously been utilized; and submission to the court of a list of direct repair programs, if any, to which the plaintiffs belong.

At no time did this court analyze or discuss the sufficiency of factual pleadings with respect to either federal antitrust claims or any state law causes of action.  Despite this, the Defendants have

made much of the existence of this order, "shopping" it around as an exhibit to every motion to dismiss that was filed thereafter. The argument presented is that it represents a pre-existing determination of insufficiency of the complaints, both legal and factual, such that any and all subsequent actions must likewise be dismissed.

Plaintiffs are fully confident this Court is completely aware of the contents of the orders it has previously issued. Plaintiffs are likewise fully confident the Court is aware this case never actually was dismissed as defendants assert. The changes requested did not implicate any substantive issue of law.  For purposes of the Court's current analytical obligation, the previous order does not carry the dispositive weight asserted by the Defendants.


## V.  Shotgun Pleadings

The Defendants collectively assert all the complaints must be dismissed as constituting improper/impermissible shotgun pleadings.[3]  These purported shotgun pleadings are allegedly in the form of two improprieties: referring collectively to the Defendants as "Defendants" rather than individually naming each and every defendant at all instances, and incorporating by reference preceding paragraphs.

The ill of so-called "shotgun pleadings," as the Defendants point out, is the inability of each defendant to determine of what they are accused of doing and the inability to determine which allegations of fact are intended to support which claim(s) for relief.  *Hickman v. Hickman*, 563 Fed. Appx. 742, 744 (11th Cir. 2014).  Multiple claims should be presented separately in adherence to Federal Rule of Civil Procedure 10(b) "and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading *Id.* at 744.

This is certainly an understandable concern when multiple defendants are named and the pleading does not make clear of what each defendant is accused .

However, in the present cause, the complaints make very clear that all named Defendants have engaged in the same activities: each company illegally suppressed labor rates through adoption of arbitrarily determined payment ceilings, each company engaged in illegal boycotting by publishing

---

[3]Presumably the Florida Action is now exempt from this argument as it has amended its complaint.

false and/or misleading information to both claimants and insureds harmful to the Plaintiffs, each defendants' regular business practices violate the terms of the 1963 Consent Decree, and so forth.

Where one particular Defendant had a unique role, that Defendant is clearly identified, e.g., State Farm conducted an invalid "survey" of labor rates, State Farm manipulated the rates it obtained to ones it found acceptable, and so forth.

Where different defendants are alleged to have engaged in differing actions, plaintiffs would agree that failing to distinguish which defendants stand accused of performing what actions would be inappropriate. However, again that is not the case in this instance. A plain reading of the complaint clearly indicates each and every defendant has engaged in the actions set forth. Where such is the case, plaintiffs are arguably not required to go through the pointless exercise of listing each and every defendant by name in each and every paragraph.

This is particularly apt in cases such as this, where (again) each of numerous Defendants have engaged in the same illegal activities. If Defendants argument is given credibility under the facts, it will only result in paragraphs such as the following:

> State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, Progressive Gulf Insurance Company, Progressive Casualty Insurance Company, Allstate Property and Casualty Company, Allstate Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Mutual Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, United Services Automobile Association, USAA Casualty Insurance Company, SAFECO Insurance Company of Illinois, Shelter Mutual Insurance Company, Direct General Insurance Company of Mississippi, Shelter General Insurance Company, and Mississippi Farm Bureau Casualty Insurance Company regularly and routinely engage in "steering" in order to punish noncompliant shops. Mississippi law prohibits automobile insurance companies from requiring consumers to use particular body shops to effect repairs. In order to avoid facially violating this law, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, Progressive Gulf Insurance Company, Progressive Casualty Insurance Company, Allstate Property and Casualty Company, Allstate Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Mutual Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, United Services Automobile Association, USAA Casualty Insurance Company, SAFECO Insurance Company of Illinois, Shelter Mutual Insurance Company, Direct General Insurance Company of Mississippi, Shelter General Insurance Company, and Mississippi Farm Bureau Casualty Insurance Company will "steer" insureds and/or claimants to favored,

compliant shops through misrepresentation, insinuation, and casting aspersions upon the business integrity and quality of disfavored repair centers.

If assuring comprehension and understanding are the goals, Defendants argument must fail. Following Defendants request would result in an entire complaint filled with incomprehensible paragraphs as shown immediately above.

As a practical matter, the Defendants have defeated their own argument by filing a motion to dismiss which clearly articulates the allegations of the complaint and just as thoroughly sets out specific reasons why the complaints should be dismissed.   Though these motions rest upon misrepresentations of both fact and law, they do establish the harm and confusion shotgun pleading may cause is wholly absent and Defendants arguments are merely pro forma elevations of form over function.   Defendants are clearly capable of framing appropriate answers.

With respect to incorporation by reference, the moving defendants omit one very significant fact in their arguments.   One of the primary allegations is the existence of a combination and/or conspiracy in violation of the federal Sherman antitrust act. The facts making up the individual tort and\or state law claims are thus rationally linked to establishing the factual basis of the combination and\or conspiracy claim. Arguably, incorporating by reference the facts of the tort and\or state law claims is therefore necessary and not merely unguided or incomprehensible pleading.

In the end, however, Defendants request too much. Even should this court decide the form in which the pleadings have been filed constitutes "shotgun pleadings" the proper remedy is not dismissal but amendment.  *Maguluta v. Samples*,  375 F.3D 1269, 1272-73.

## VI.  Omission of Particular Facts

The Defendants assert particular facts must be stated in an antitrust complaint in order to meet the pleading requirements. Those specific facts[4] are set out below in conjunction with the summary of responses thereto by Plaintiffs:

---

[4] Defendant GEICO specifically refers to these eight items as elements. However, "element" has a very specific legal meaning. GEICO proffers no authority that these eight inclusions are essential elements of any designated cause of action.

1.      A product or service market that is relevant for antitrust purposes;

The complaints each set out the relevant product or service market in the very first sentences of each "FACTS" section: each individual Plaintiff is in the business of recovery and/or repair of motor vehicles involved in collisions.

There is nothing magical about identifying the relevant product market. It is simply a matter of identifying the product or service which has been subject to illegal antitrust activity by the defendants.   Nonetheless, Defendants appear to be arguing some greater analysis or inclusion of discussion of elasticity of demand is required for the allegations of the complaints to be sufficient. It is not.  Detailed analysis of market and cross elasticity is only necessary where the product market is neither obvious nor undisputed.   *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 961 (6th Cir.  2004).

None of the defendants have alleged product market here at issue is either undisputed or anything other than obvious. As such there is no greater analysis that needs to be undertaken nor discussion had. The factual allegations of the complaint more than meet the minimum threshold requirements.

2.      A geographical market that is relevant for antitrust purposes;

As with the product market, the geographical market is set forth at the commencement of each "FACTS" section: the market area constitutes the state in which the respective complaint was filed. Plaintiffs regularly repair vehicles from throughout their respective states. The defendants maintain their market share throughout the respective states.

Given that vehicles are, obviously, mobile and people can and are damaged by drivers who do not live within the local area of the shops, designation of the state as the geographical market is more than reasonable and defendants are put forth no reasons nor authority why this is unacceptable. The factual allegations of the complaint more than meet the minimum threshold requirements.

3.      Market power in the relevant product/service and geographic markets;

As Exhibit 1 to each complaint filed, the Plaintiffs attached documentation establishing the defendants relevant market share.  Within the body of the complaints, the plaintiffs also discussed relative market share as well as the overall effect of the cumulative market share held by the defendants collectively. Plaintiffs also pointed out that the vast majority of their business comes from

customers for whom the defendants are responsible for making repair cost payments. Plaintiffs further pointed out that insurance companies hold extensive influence over where customers take their vehicles for collision repairs, and that this reality has, in fact, been officially recognized by other courts. Factual allegations of the complaint more than meet the minimum threshold requirements.

4.      Barriers to entry;

The plaintiffs and defendants do not occupy or perform in the same industry. They are not competitors with each other. They do not sell, re-sell nor buy each other's products as a regular and routine part of their respective business practices. Indeed, given various state licensure requirements as well as registration requirements, it would be impossible for the parties to do so.  Additionally, the plaintiffs have not alleged monopoly or attempts to monopolize by the plaintiffs.

Diligent research has found absolutely no authority which applies a requirement to establish barriers to entry outside of the factual circumstances described above.  In the absence of any authority requiring discussion of this "element" under the same or at least similar factual circumstances, defendants' assertion that it must be included is without legal basis.

5.      Wrongful conduct resulting in anticompetitive effects;

The complaints are rife with facts setting out the Defendants' wrongful conduct, to wit: Defendants have suppressed and illegally fixed the price of labor rates in the body shop collision repair industry; defendants have suppressed and illegally fixed the price of paint and materials via the application of arbitrary caps; defendants have been illegally engaged in a boycott in violation of federal antitrust law by steering customers away from plaintiffs' businesses, to shop which comply with defendants' arbitrary price fixed ceilings; imposition of actual or defacto parts procurement programs; refusal to compensate for parts actually purchased and utilized in the vehicle repair, and so on.

As discussed above, the anticompetitive effects of defendants' illegal activities have effectively eliminated competition from within the body shop industry. Plaintiffs are not free to raise or lower their prices, plaintiffs are unable to respond to changes in market conditions, quality has been severely hampered as the fixed price ceilings established and enforced by the defendants result in the most incompetent body shop being paid the exact same amount as the most accomplished body shop. Factual allegations of the complaint more than meet the minimum threshold requirements.

6.      That the anticompetitive effects outweigh the pro-competitive benefits;

The plaintiffs are not required nor even encouraged to set out any facts or discussion that the anti-competitive effects of their illegal actions outweigh purported pro-competitive benefits.  As discussed above, the burden of pleading and proving pro-competitive benefits falls to the defendant. The plaintiffs cannot be punished for failing to assume a burden which has been allocated to the defendant. Factual allegations of the complaint more than meet the minimum threshold requirements.

7.      Antitrust injury or standing

Antitrust injury is discussed above, including citations to appropriate authority, in the discussion regarding boycotting. For the sake of brevity, Plaintiffs will refer the Court to that section of this summary for legal citation to authority.

As discussed, the defendants' actions have caused significant injury and damages to both the individual plaintiffs, but most importantly to the industry. Defendants' illegal actions have resulted, as noted, in the virtual extinction of competition in the collision repair industry as well as the practical elimination of a quality factor between shops and thus substantial impact on consumer choice.  The factual allegations of the complaint more than meet the minimum threshold requirements.

8.      Damages.

Damages caused by the Defendants' illegal actions, both to the plaintiffs individually and to the industry as a whole, are discussed repeatedly throughout the various complaints. Again, for the sake of brevity, the court would refer to the prayer for relief of each complaint for a more specific list of those damages. For purposes of this summary, the plaintiffs note they have alleged damages resulting from theDefendants' suppression of labor rates, suppression of paint and material compensation, refusal to pay or fully pay for repair processes and procedures necessary to return vehicles to pre-accident condition, steering, treble damages for federal boycotting and price-fixing claims, and so forth.

### VII.  State Law Causes of Action

Where possible, the plaintiffs have grouped the various state law causes of action based upon the arguments made by the various defendants for singular discussion.  Where discussion of one particular state cause of action is necessary, it is included following the more general discussion.

-16-

1.      Quantum meruit, unjust enrichment, quasi-estoppel

With respect to these equitable claims, the defendants variously argued the plaintiffs cannot maintain these causes of action because of the existence of an express contract between themselves and the defendants.

Nowhere in the Complaints do the Plaintiffs assert they have, or had at any time, a contract between themselves and any of the Defendants.  The Defendants have asserted such exists.  However, that is an affirmative defense the Defendants must plead by way of an answer, which they have not filed, and for which they bear the burden of proof.  Simply stating there is a contract in a motion to dismiss is insufficient and conclusory.  Defendants are simply creating facts on behalf of the plaintiffs so as to presumably have a basis in which to seek dismissal. Any argument regarding a purported contract must be excluded from this Court's consideration.

As the Plaintiffs have not asserted the existence of a contract in the Complaint and it is the factual allegations of the Complaint which are tested by a motion to dismiss such as this, the Defendants' argument regarding quantum meruit and unjust enrichment without merit.

With respect to quasi-estoppel, each of the defendants assert that the respective states do not permit or recognize a cause of action for this long-established equitable doctrine.  Respectfully, none of the defendants cite any authority which hold as purported. There is absolutely no authority which precludes quasi-estoppel as a permissible cause of action.  In the absence of any such authority, the defendants are left solely with arguments of counsel to not only bar a cause of action, but to bar a cause of action in several other states in which the court has no legal authority to create new law.

2.      Tortious interference with business prospects

This tort is recognized in every jurisdiction in which complaints have been filed on behalf of body shop plaintiffs. The wording of the title does very in a minor fashion across the state, i.e., tortious interference with business\business prospects\economic advantage, and so forth.

As with the name, the elements required are generally static from state to state. Ordinarily speaking, in order to establish tortious interference with business prospects, the elements include an intentional and willful interference with the plaintiffs' business prospects\anticipated contracts\economic advantage of which the defendant was aware, with the intent to cause harm to the

plaintiff, improper means or motive for causing the harm and which does actually cause damage to the plaintiff.

The facts set forth in the complaint establishes that the defendants intentionally and willfully made numerous misrepresentations and false statements to prospective customers of the plaintiffs' who had identified the plaintiffs businesses as their choice of collision repair facility. These misrepresentations and false statements include, but are not limited to, advising customers the defendants were not on the preferred provider list, that repairs at plaintiffs' shops would take longer than at other shops and the customer would run out of rental car coverage leaving them responsible for additional charges, that the plaintiffs' charge more than other shops in the area and customers will be responsible for additional costs, that complaints had been received about the quality of repairs at the plaintiffs' shops and that the defendant could not guarantee the work done at the plaintiffs shops.

These misrepresentations and false statements were made to customers regardless of the existence (or lack of existence) of a pre-existing relationship between the insurer and the customer. The statements made without any effort to determine the truthfulness of the content, were made while knowing the statements were false and/or misleading, and made solely for the purposes of punishing and damaging the plaintiffs. These facts meet the essential elements of the tort of tortious interference with business prospects.

Some states recognize the concept of privilege, an excusal from liability despite the remainder of the elements being met. However, privilege is not absolute. Privilege will not apply where the defendant has an improper motive and/or utilized improper means. Utah recognizes both the qualified privilege and the exceptions to the privilege. Improper purpose has been generally accepted as the "general agreement that a purely "malicious" motive, in the sense of spite and a desire to do harm to the plaintiff for its own sake, will make the defendant liable for interference with a contract. The same is true of a mere officious intermeddling for no other reason than a desire to interfere." *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982). The alternative of improper purpose will be satisfied where it can be shown that the actor's predominant purpose was to injure the plaintiff. *Id.*

Improper means is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law

-18-

rules. Such acts are illegal or tortious in themselves and hence are clearly "improper" means of interference, unless those means consist of constitutionally protected activity, like the exercise of First Amendment rights. . . . "Commonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." . . . Means may also be improper or wrongful because they violate "an established standard of a trade or profession." *Id.* at 308 (internal citations omitted).

In the present cases, the allegations of the complaint set out both improper means and improper motive, either of which is independently sufficient to destroy any purported privilege. The facts set out in the complaint, which must be accepted as true, show the Defendants acted with the improper purpose of specifically harming the plaintiffs, to drive customers away as a form of punishment and to injure the Plaintiffs.

Similarly the factual allegations of the complaint show the Defendants used improper means for achieving their improper purpose by use of factual misrepresentation, defamation, disparaging falsehood and what can only reasonably be described as financial intimidation by threatening the prospective customers with additional costs for which the customers would be responsible if the Plaintiffs' shops were patronized for repairs.

Florida maintains a similar rule and recognizes similar privileges which do not apply if the defendant utilizes improper means. Florida does not clearly define what actions would constitute improper means. However, Florida is very clear on two relevant points: once a plaintiff has established a prime facie case of interference, the burden of justifying its conduct is borne by the defendant. *Int'l Sales & Serv. v. Austral Insulated Prods*., 262 F.3d 1152, 1159 (11th Cir. 2001). Second, where there is room for disagreement on the validity (or lack there of) of an asserted justification, the question is reserved for the jury. *Id.* at 1160.

Thus, while Florida has not established any bright line rules on improper means, it is clear that extant authority does not allow dismissal based upon the argument of counsel that the interference was privileged. Defendants bear the burden of proof on this issue and that burden cannot be met with the bare argument of counsel.

For this tort, Indiana adds an additional element to those described above, including, ultimately, evidence of illegality. *Melton v. Ousley*, 925 N.E.2d 430, 440, FN 9 (Ind. Ct. App. 2010)

The Defendants argue the complaints do not set forth any facts showing illegal conduct and the claim must therefore be dismissed.  But this position is manifestly incorrect.

The complaints clearly set out the illegal conduct, namely the Defendants have violated various statutes, including Indiana Code Section 27-4-1-3, Unfair Competition; Unfair or Deceptive Acts and Practices, and 27-4-1-4(a)(16), Unfair Claims Settlement Practices.  Violation of these statutes subject an insurer to civil prosecution and penalties of up to $25,000.00 per violation, or up to $50,000.00 per violation if the insurer knew or reasonably should have know of the violation.

The complaints clearly set out the Defendants have violated these statutes by conveying false and/or misleading statements to the public regarding the Plaintiffs' businesses impugning the quality, timeliness, cost and reliability of Plaintiffs' work, telling consumers Plaintiffs' work would not be fully covered by the relevant insurance policy, that rental car coverage would be withdrawn and the consumer would have to assume all of these costs, among other statements.

The facts alleged, which this Court is bound to accept as true, are more than sufficient to support an inference of illegal behavior.  As such, Defendants' motion to dismiss lacks factual merit.

### 3.   Conversion

The Defendants uniformly allege this cause must be dismissed because state law does not recognize a conversion cause of action for money damages.  None of the authority cited by the Defendants hold to that effect.  In the absence of authority, it is an improper suggestion by the Defendants that this Court create new state law prohibiting a cause of action otherwise recognized in the individual states.

### 4.   State Statutes

#### a.   Mississippi

The Mississippi Action includes as a cause of action the Defendants' violation of Mississippi Code Section 83-11-501, which reads,

> No insurer may require as a condition of payment of a claim that repairs to a damaged vehicle, including glass repairs or replacements, must be made by a particular contractor or motor vehicle repair shop; provided, however, the most an

insurer shall be required to pay for the repair of the vehicle or repair or replacement of the glass is the lowest amount that such vehicle or glass could be **properly and fairly repaired** or replaced by a contractor or repair shop within a reasonable geographical or trade area of the insured.  (Emphasis added.)

The Defendants variously assert two primary grounds for dismissal of this cause: first, that no private right of action is permitted for violation of this statute; and, second, their actions do not violate this statute.  Respectfully, both of these arguments are without factual or legal grounds.

None of the Defendants assert any authority which prohibit a private right of action for violation of this statute.  Apparently the issue has never specifically arisen as there is no direct case law on point.  However, courts in Mississippi have tacitly acknowledged the right of individuals to pursue a private action against violators.  *Addison v. Allstate Ins. Co.* 97 F. Supp. 2d 771 (S.D. Miss. 2000)(applying Mississippi law) and *Christmon v. Allstate Ins. Co.* 82 F. Supp. 2d 612 (S.D. Miss. 2000)(applying Mississippi law).

As private actions have proceeded previously and no authority excludes the cause of action, there is no legal basis for Defendants' assertions.

In making the second argument, more than one Defendants admits to taking the actions described by the Plaintiffs in their complaint.  They excuse themselves by asserting the statute permits them to take the actions described.  Respectfully, the only manner in which Defendants' actions can be read as permissible under the statute is if one does not read the statute at all.

The statute specifically prohibits an insurer from conditioning payment of a claim upon use of a specified body shop or repairer.  The insurers are, in fact, doing that very thing.  The first sentence of the statute conveys the prohibition but, upon being told a consumer intends to take a vehicle to a Plaintiff's shop, the consumer is clearly and unambiguously told that patronizing that

-21-

shop will result in costs of repair being unpaid by the insurer and shifted to the consumer.  In other words, if the consumer agrees to patronize a price-fixed compliant shop, the claim will be paid in full. If the consumer insists on having its choice of repairer do the work, the claim will **not** be paid in full.

The violation of this portion of the statute by the Defendants is therefore as clear and unambiguous as the language of the statute itself prohibiting these very actions.

Violation of the second requirement of the statute is just as clear.  Predictably, the Defendants have focused upon the words "the most an insurer shall be required to pay for the repair of the vehicle . . . is the lowest amount . . ." and argue its practices are therefore wholly permitted by the statute.

However, this language is immediately followed by limiting or conditioning language.  The insurer is not required to pay more than the least amount for which the vehicle can be **properly and fairly repaired** within a reasonable geographical or trade area.  Insurers must therefore pay for a proper and fair repair.  What constitutes the least amount is determined not by how cheaply the job can be performed but by the cost to complete a proper and fair repair.  Cheapest does not automatically equate with proper and fair; most usually it is just cheaper.

The Defendant insurers have interpreted this language to mean it is perfectly acceptable and legal for them to find the cheapest estimate and deem that the extent of their payment obligation, whether or not it even pays for complete repairs, much less proper and fair repairs.

As the subject of the statute's specific instructions and prohibitions, the Defendants arguably bear the burden of establishing their determination of full payment constitutes the amount actually required to make a proper and fair repair.  This necessarily includes the obligation to explain why processes and procedures set out by the industry-wide databases and recommended by the repair

-22-

facilities are unnecessary to a proper and fair repair, or why they are not required to pay for the same even when the processes and procedures are undisputedly necessary.

On a final note, Plaintiffs highlight Defendant GEICO's misleading statements in particular on this subject. Though unnecessary for a determination on this issue, GEICO repeatedly asserts the effect of Plaintiffs' claims is to raise rates and increase costs to consumers in this state. GEICO goes so far as to state, "[t]his Court should not speculate that the Mississippi Legislature impliedly created a private right of action with the intent of increasing costs to Mississippi consumers for the benefit of body shop . . ." Other Defendants make similiar statements but not with the degree of misrepresentation of this particular sentence.

The Plaintiffs are not asking the Court to impliedly create anything for their benefit. The law prohibiting Defendants' actions already exists, there is nothing for this Court to create. What is particularly egregious is GEICO's linking of a private right of action with an intentional increase in costs to consumers and, presumably, unjustifiable benefit of the Plaintiffs.

As with so many other things, the costs to consumers is directly within the control of the Defendants. Nothing requires the Defendants, including GEICO, to shift the costs of repairs to a consumer–they willingly choose to do so, even when the consumer is a third-party claimant. Nothing requires the Defendants, including GEICO, to raise policy premiums–they willingly choose to do so to maintain or increase their profit margin. Just as Defendants imply to consumers that delays in beginning repairs are attributable to body shops rather than Defendants' own decision to delay sending an adjuster to evaluate the loss, so GEICO here hopes this Court will ignore the ills it predicts are solely within the control of GEICO and the other Defendants. It is typical of the insurers approach to all matters and just as misleading.

-23-

Defendants' argument regarding the dismissal of this Mississippi claim is without merit, either factual or legal.

b.      Tennessee

Tennessee Code Section 47-18-104(b)(8) (Tennessee Consumer Protection Act, or TCPA) states that it shall constitute an unfair trade practice  to disparage the goods, services or business of another by false or misleading representations of fact. Such actions are unlawful.

The Defendants variously assert this claim must be dismissed because the Plaintiffs failed to allege specific facts particularly in compliance with Rule of Civil Procedure 9, the statements made about the Plaintiffs are only opinions and therefore not actionable under the statute, the "pro-competitive" benefits of Defendants actions outweigh the harm to consumers, and an exemption from liability under the statute exists for insurers.  None of these arguments have any support in law or fact.

Tennessee courts have previously recognized the heightened pleading requirements of Rule 9(b) apply to fraud claims under this consumer protection act.  This would implicate claims brought under Code Section 47-18-109.   However, no Tennessee court has applied the fraud pleading requirement to sections of the act which do not allege fraud.  See *Walker v. Frontier Leasing Corp.*, 2010 Tenn. App. 226, *13 (Tenn. Ct. App. 2010) ("the requirement of pleading fraud with particularity imposed by Tenn. R. Civ. P. 9.02 applies to TCPA claims based on fraud."); *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273 ("Rule 9.02 requires that the circumstances constituting fraud must be plead with particularity..").

The Plaintiffs' cause of action arises from Section 47-18-104, not 47-18-109, and the Plaintiffs' cause of action does not assert any fraud claims.  As such, given the specifically articulated

-24-

limitation to fraud claims, this argument is without legal authority.  The Plaintiffs are not required to plead with fraud particularity in the absence of a fraud claim.

Collateral to this is some Defendants' argument in the alternative that Plaintiffs have failed to identify any specific allegations of disparaging, false or misleading representations and/or failed to identify any such statements with sufficient particularity to meet the pleading requirements.  These are incorrect statements.

The Defendants published to claimants and insureds statements that quality issues have arisen with that particular shop, that complaints have been received about that particular shop from other consumers, that the shop charges more than any other shop in the area and these additional costs will have to be paid by the consumer, that repairs at the disfavored shop will take much longer than at other, preferred shops and the consumer will be responsible for rental car fees beyond a certain date, and that the Defendant cannot guarantee the work of that shop as it can at other shops.  Assertions that Plaintiffs' failed to allege specific statments is therefore factually inaccurate.

Tennessee courts have apparently not had cause to define and distinguish opinion from fact, though other states have, ordinarily in the context of defamation claims.  The general consensus appears to be that a fact is a statement that can be verified, i.e., proven true or false, while opinions cannot as they reflect a state of mind.  *Ward v Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994), *Goetz v. Kuntzler*, 625 N.Y.S. 2d 447, 451 (N.Y. 1994).

The disparaging statements made by the Defendants about the Plaintiffs are clearly purported facts: higher rates than other shops, delays in completing work, complaints received about the quality of Plaintiffs' work.  All of these are facts which can be verified and proven either true or false.  As they can be (and should have been) verified prior to public dissemination, they cannot be defined as

opinions.  The Defendants disseminated the statements as facts and the statements are clearly disparaging, both explicitly and implicitly.  As such, they violate the statute and are unlawful.

Only GEICO argues the pro-competitive benefit of its actions outweigh the harm to consumers.  In so arguing, GEICO attempts to incorporate an antitrust element into the Tennessee Consumer Protection Act, which does not even contemplate such a balancing.  In order to recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act; and (2) that the defendant's conduct caused an "ascertainable loss of money or property . . . ." *Audio Visual Artistry v. Tanzer*, 403 S.W. 3d.789, 810 (Tenn. Ct. App. 2012).  That is all.

The Plaintiffs have asserted facts substantiating these two elements.  GEICO's assertion this Court should incorporate a third and wholly unrelated essential element into the statute is without legal or factual support.

Finally, some Defendants argue the existence of an exemption from liability.  Defendants assert no liability for violation of the TCPA as they are purportedly exempt from it by virtue of amendment to another statute, Section 56-8-113.   As set out by the Defendants, Section 56-8-113 provides for the sole and exclusive statutory  remedy for any alleged breach of, or alleged unfair or deceptive acts or practices in connection with, a contract of insurance.

The Plaintiffs do not complain of a breach of or unfair or deceptive acts or practices in connection with a contract of insurance.  They do not seek enforcement of a policy of insurance, nor interpretation of policy terms, nor does there exist an insurer-insured relationship between the parties to this action.   The Plaintiffs seek to obtain damages from business defendants who have made numerous misrepresentations about them in violation of Tennessee statute, just as they would be

-26-

entitled to do if the misrepresentations had been made by a grocery store instead of an insurance company.

In the absence of an insured-insurer relationship between the parties, this argument must be denied.

c.      Louisiana

The Louisiana Unfair Trace Practices Act ("LUTPA") Louisiana Revised Statute § 51:1405, et seq., prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.  An act or practice violates this statute if it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.  The policy behind the enactment of LUTPA is to protect consumers and to foster competition.

The Defendants argue this cause of action is unavailable to the Plaintiffs as Defendants argue they are insurance companies and therefore are subject only to enforcement provisions pursued by the Insurance Commissioner.

State Farm sets out its motion, "The three State Farm Defendants are exempt from the LUTPA because that law expressly exempts any 'actions or transactions subject to the jurisdiction of the . . . insurance commissioner . . . ' La. Rev. Stat. Ann. § 51:1406(1)." (All internal elipses in original.)

State Farm Defendants go on to assert that because they are insurance companies, registered as such with the Department of Insurance, they are exempt from the Unfair Trade Practices prohibitions on conduct.  State Farm continues, "The Complaint alleges that the State Farm Defendants–three insurance companies–engaged in unfair and deceptive acts or practices in the course of their business. . . . Notably the Louisiana Insurance Code contains its own provision which

prohibits 'engag[ing] in . . . an unfair or deceptive act or practice in the conduct of the business of insurance.' La. Rev. Stat. Ann §22:1963."

State Farm invites this Court to assume without question that by virtue of being an insurance company, they are exempt from all liability outside the purview of Commission enforcement. This is error.

First, the Insurance Commission and thus the Commissioner, does not have limitless and undefined authority, not even over wrongful acts which happen to be committed by insurance companies. The Commissioner only has authority over actions taken by insurance companies "in the conduct of the business of insurance." *Id.* Acts which do not comprise "the business of insurance" are therefore not exempt, not even for insurance companies.

In defining what constitutes "the business of insurance" for purposes of examining ERISA preemption, the Louisiana Supreme Court drew from two sources. The first was the Mississippi Supreme Court's determination that laws of general application not specifically directed at insurance companies did not fit the common sense meaning of the phrase "regulates insurance." *Cramer v. Association Life Ins. Co.,* 569 So. 2d 533, 536 (La. 1990).

The court also relied upon definitional case law interpreting "the business of insurance" under the federal McCarran-Ferguson Act. The court approved of the three-part test devised for McCarran: first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. *Id.* at 537 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48-49 (1987)(overruled as to application of McCarran-Ferguson factor to ERISA preemption inquiries).

The Louisiana Supreme Court further stated,

. . . As we appreciate the use of the term "spreading of risk" in the context of an insurance policy, the risk focused upon is that risk for which the insurance company has specifically contracted to reimburse its insured. . . . Thus, when looking to see if a particular practice acts to "spread the risk," we must focus on the actual risks that were transferred from the insured to the insurer and determine if the practice acts to alter the contractual apportionment of those risks.

*Id.* at 537.

Defendants' pattern and practice of illegal acts does not have the effect of transferring or spreading policyholder risk. The statute does not transfer or spread risk at all; it prohibits unfair trade practices. LUTPA is not integral to the insurer-insured relationship. It has no impact on that relationship whatsoever. LUTPA is not limited to insurance industry entities. It is applicable to all industries subject to certain exemptions, within which insurance industry actions outside the business of insurance do not fall.

This is consistent with the Supreme Court holding in *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 217 (U.S. 1979), finding that the "business of insurance companies" did not equate to "the business of insurance" for purposes of McCarran-Ferguson.

Thus, under the totality of authority and fact, the mere involvement of an insurer does not confer "business of insurance" status upon its activities and does not exempt insurers from statutory liability. Here, State Farm's activities are well outside the scope of the defined parameters of the business of insurance. Additionally, there is no authority which permits the state Commissioner of Insurance to regulate the activities of collision repair shops or repair shops' disputes with any other business.

The exemption State Farm claims does not exist for this litigation. State Farm cannot escape application of its actions, which it does not dispute occurred. As such, the motion to dismiss upon this ground is without merit.

Defendant GEICO makes the same argument but it, too, cannot find escape via the Insurance Commissioner. GEICO does make the additional argument in the alternative that Plaintiffs failed to plead sufficient facts with respect to violation of this statute as they failed to plead with the fraud particularly requirements of Rule 9(b).

As it has on several other occasions, GEICO has offered a complete misrepresentation of both the facts of the complaint and, more importantly, the case law upon which it relies. GEICO cites *Felder's Collision Parts, Inc. v. GM Co.*, 960 F. Supp. 2d 617 (M.D. La. 2013), for the proffered proposition that because only the most egregious conduct is sanctionable under LUTPA, including fraud and other torts, then all LUTPA claims are subject to the fraud heightened pleading standard.

*Felder*'s does not say this. It does not infer this. *Felder's* repeats that for claims of fraud, pleading particular facts under Rule 9(b) is required. It does not, and could not, stand for the proposition that other causes of action can be inferred into the Rule 9 auspices. Such an interpretation violates well-established Supreme Court authority. A district court may not increase or add to the limited list of claims subject to Rule 9's pleading particularity requirement by fiat, only an official amendment to the Federal Rules of Procedure can. *Twombly,* 550 U.S. at 576, FN 3 and *Jones*, 549 U.S. at 213.

Because GEICO's argument rests upon an offer of misrepresented authority and requires violation of clear Supreme Court authority, it lacks any and all legal grounds upon which to grant the requested relief.

The complaint alleges the Defendants, including GEICO, have refused to pay or fully pay for necessary processes and procedures required to return vehicles to pre-accident condition and thereby endangered the life and safety of consumers, while causing pecuniary harm to Plaintiffs, for the pecuniary benefit of Defendants; that Defendants require, either explicitly or via refusal to pay for otherwise, the use of recycled, used or aftermarket parts in contravention of expert recommendations otherwise, thereby endangering the life and safety of consumers, causing pecuniary harm to Plaintiffs, for the pecuniary benefit of Defendants; that Defendants require shops to purchase replacement parts of unknown manufacture, provenance, quality or reliability because it is the cheapest part available, thereby endangering the life and safety of consumers, causing pecuniary harm to Plaintiffs, for the pecuniary benefit of Defendants.

In other words, the Defendants have repeatedly and in a variety of manners required the Plaintiffs to endanger consumers. Arguably, this conduct qualifies as egregious behavior constituting immoral, unethical, oppressive, unscrupulous, or substantially injurious, particularly to one of the specifically articulated purposes for enactment of the statute in the first place, protection of consumers.

This argument lacks both legal and factual bases. As the other Defendants make similar or identical arguments to those disposed of here, no further address is required.

## **CONCLUSION**

The various complaints more than meet the factual pleading requirements for antitrust allegations. Defendants' various arguments to the contrary contradict unambiguous, binding authority. Similarly, the state law causes of action are factually supported and legally cognizable.

The Defendant's Motion to Dismiss for Failure to State a Claim are without merit, legally or factually

and, respectfully, must be denied in their entirety.

Respectfully submitted, this the 11th day November, 2014.

/s/ Allison P. Fry.
JOHN ARTHUR EAVES, JR.
ALLISON P. FRY,
John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:     601.355.7961
Facsimile:     601.355.0530
JohnJr@eaveslaw.com

Allison@eaveslaw.com
Will@eaveslaw.com

Attorney for the Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of November, 2014, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of

Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ *Allison P. Fry*
Allison P. Fry

-32-