UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PARKER AUTO BODY INC., et al.,

    Plaintiffs,

v.                                         Case No:  6:14-cv-6004-Orl-31TBS
                                       MDL Case No:  6:14-md-2557-GAP-TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.
_____

SOUTHERN COLLISION &
RESTORATION, LLC,

    Plaintiff,

v.                                         Case No:  6:14-cv-6005-Orl-31TBS
                                       MDL Case No:  6:14-md-2557-GAP-TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.
_____

## REPORT AND RECOMMENDATION

Pending before me, on referral from the presiding district judge, are Defendants' motions to dismiss in these two cases (Parker Auto Body Inc. v. State Farm Mutual Automobile Ins. Co., Case No. 6:14-cv-6004, Docs. 70, 73, 76 79, 88, and 100-102; and Southern Collision & Restoration, LLC v. State Farm Mutual Automobile Ins. Co., Case No. 6:14-cv-6005, Doc. 19).  Upon due consideration I respectfully recommend that the motions be granted in part and denied in part, that Counts I and IV of the complaints in each case be dismissed with prejudice, and that the remaining counts in both complaints be dismissed without prejudice.

## I. Background

Plaintiffs in Case No. 6:14-cv-6004 are a group of 39 Louisiana auto body repair shops and Defendants are 56 insurance companies that write automobile insurance in the state of Louisiana (Parker complaint, ¶¶ 1-98).  Plaintiff in Case No. 6:14-cv-6005 is also a body shop, and Defendants are three insurance companies affiliated with State Farm (Southern Collision complaint, ¶¶ 1, 2, 6, 7).  In both cases, Plaintiffs allege that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (Parker complaint, ¶¶ 188-206; Southern Collision complaint, ¶¶ 81-99).  They also make claims for damages based upon violations of the Louisiana Unfair Trade Practices Act (LUTPA), unjust enrichment, quasi-estoppel, tortious interference with business relations, and conversion (Parker complaint, ¶¶ 167-87; Southern Collision complaint, ¶¶ 61-80).  The allegations in these cases are similar to the allegations made by the plaintiffs in A & E Auto Body, Inc. v. 21st Century Centennial Insurance Co., No. 6:14-cv-00310-Orl-31TBS, which the Court summarized in its Order granting the motions to dismiss in that case:

> The Defendants in this case are alleged to "exert control" over the Plaintiffs' businesses (and the hourly rates paid by the Defendants) in a number of ways, beginning with agreements generally referred to as "direct repair programs" or "DRPs". To participate in a particular insurer's DRP, a repair shop typically agrees to certain concessions in regard to such things as the prices it will charge and the priority given to vehicles owned by people who have insurance through that insurer.  In exchange, the repair shop is listed as a "preferred provider".  However, the Plaintiffs complain that the prices that they were permitted to charge under the DRPs were unfairly manipulated, that even repair shops that were not participating in DRPs were restricted to those price ceilings, and that repair shops that complained about these practices or tried to charge higher prices faced intimidation and boycotts from the insurers.

- 2 -

> As a general proposition, each DRP contains language obligating the repair shop to charge the insurance company no more than the "market rate" for repairs in the general area. State Farm Mutual Automobile Insurance Company ("State Farm"), a Defendant in this case, determines this market rate. State Farm surveys the repair shops in a given area, determines the hourly rate charged by each repair technician, and then designates a rate just above the midpoint of all rates charged to be the "market rate."  However, the Plaintiffs complain that State Farm alters the survey results to achieve a "wholly artificial 'market rate'" and uses this artificially lowered result to negotiate price decreases from repair shops.  If a repair shop attempts to raise its hourly rate, State Farm will, among other things, remove it or threaten to remove it from the DRP.
>
> The other Defendants, who do not perform such surveys, "specifically advised the Plaintiffs that they will pay no more than State Farm pays for labor."  The Defendants refuse to pay a higher labor rate even to Plaintiffs who are not participating in a DRP.
>
> The Plaintiffs also allege that the Defendants improperly lowered the amounts that they paid for repairs by, among other things, refusing to pay for replacement parts even where the repair shop thought replacement was a better option than repair and by requiring utilization of used parts even where new parts were available.  The Plaintiffs also complain that the Defendants (1) are refusing to abide by the estimates set forth in the industry's leading collision-repair-estimating databases; (2) that they are refusing to pay for certain required materials and practices on the grounds that those items are included in the price of the repair; and (3) that they have imposed arbitrary caps on the amount they are willing to pay for paint as part of a repair.

2015 WL 304048, at *1-2 (M.D. Fla. Jan. 21, 2015).

The Plaintiffs in Parker filed suit against Defendants in July 2014 in the United States District Court for the Western District of Louisiana.  A month later, the Southern Collision case was filed in the United States District Court for the Eastern District of Louisiana.  The United States Judicial Panel on Multidistrict Litigation transferred both cases to this district for coordinated or consolidated pretrial proceedings before District

Judge Gregory A. Presnell.  In re Auto Body Shop Antitrust Litigation, 37 F. Supp. 3d. 1388 (J.P.M.L. 2014); (see also Case No. 6:14-md-2557, Doc. 4 (JPML order transferring Parker) and Doc. 43 (JPML order transferring Southern Collision)).

Several groups of Defendants moved to dismiss the complaint in Parker; the first such motion was filed on October 3, 2014 (see Docs. 70, 73, 76, 79, 88, 100 (motions to dismiss); see also Docs. 91, 99, 101, 102 (notices of joinder in motions to dismiss)). Plaintiffs failed to file a timely response to several of these motions, and on October 22, 2014, Defendants' liaison counsel filed a notice informing the Court that the three motions filed on October 3 were ripe for consideration (Doc. 82).  On December 5, 2014, the State Farm Defendants requested permission to file a reply brief in Parker, even though Plaintiffs had not filed a response to their motion, and on December 8, the Court granted this request (Docs. 93, 94; see also Doc. 96 (Reply of State Farm Defendants)).  Finally, on January 7, 2015, Plaintiffs filed a response in opposition to a notice of joinder (Doc. 101), filed in late December by the Hanover Defendants, in the first motion to dismiss (Doc. 70).  The Hanover Defendants subsequently filed a reply (Doc. 105).

In Southern Collision, Defendants filed a four-page motion to dismiss, which incorporates by reference arguments made in motions to dismiss in Parker and in Indiana Autobody Association, Inc. v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6001 (Doc. 19).[1]  The Southern Collision Defendants also argued, citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984), that the Southern Collision complaint

---

[1] While I understand the desire to limit the duplication of arguments in this litigation, the incorporation by reference of arguments made in a motion in a different case presents concerns both in terms of notice and record completeness.  Plaintiff 0 did not object to this practice and responded in kind, incorporating by reference arguments from briefs filed in the Mississippi, Indiana, and Tennessee cases. I have addressed the merits of the motion, but in the future, the parties should not expect the Court to consider arguments that do not appear in the record of the particular case under consideration.

failed to state a Sherman Act claim because Defendants were part of a single State Farm enterprise and therefore incapable of "conspiring" with one another for purposes of § 1 of the Sherman Act (Id. at 2-3).  In its memorandum in opposition, Plaintiff Southern Collision addressed arguments referenced in Parker and Indiana Autobody, as well as the Copperweld argument.

On November 14, 2014, the Court held a hearing on the motions to dismiss in these and five other related cases (Case No. 6:14-cv-310, Doc. 282).  The Court entered its Order dismissing the amended complaint in the Florida case on January 21, 2015.  A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-00310-Orl-31TBS, 2015 WL 304048 (M.D. Fla. Jan. 21, 2015).  On February 27, Judge Presnell referred the pending motions to dismiss to me for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.  Milbum v. United States, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir.1988).  The court must also limit its consideration to the pleadings and any exhibits attached to

the pleadings. FED.R.CIV.P. 10(c); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

A plaintiff must provide enough factual allegations to raise its right to relief above the speculative level, Twombly, 550 U.S. at 555, and to indicate the presence of the required elements, Watts v. Florida International University, 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. 678 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED.R.CIV.P. 8(a) (2)).

### III. Discussion

Count I: Violation of the Louisiana Unfair Trade Practices Act

Plaintiffs allege that Defendants violated the LUTPA by: (1) refusing to pay and/or fully pay for necessary repairs; (2) requiring shops to utilize used and recycled parts "in contravention of" Plaintiffs' "expert professional opinion;" and (3) requiring shops to purchase replacement parts of unknown manufacture, reliability and/or quality (Parker complaint, ¶ 168; Southern Collision complaint ¶ 62). Defendants contend that they are

exempt from the LUTPA because Louisiana Revised Statutes § 51:1406 expressly exempts "actions or transactions subject to the jurisdiction of ... the insurance commissioner." (Parker, Doc. 70 at 15; Doc. 76 at 4). Plaintiffs argue that Defendants are not exempt because their conduct falls "well outside the scope of the defined parameters of the business of insurance." (Parker, Doc. 103 at 21).

Whether Plaintiffs' LUTPA claims are barred by § 51:1406 presents a question of statutory interpretation. When interpreting Louisiana statutes,

> [t]he paramount question in all cases ... is legislative intent; ascertaining the reason that triggered the enactment of the law is the fundamental aim of statutory interpretation. In re: Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to unveil and enforce the intent of the legislature. Id.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will; thus, interpretation of a statute involves primarily a search for the legislature's intent. LA. REV.STAT. § 1:4 (2004); LA. CIV.CODE art. 2; Lockett v. State, Dept. of Transp. and Development, 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90.

Anderson v. Ochsner Health System, 2013-2970, p. 4 (La., 7/1/14), __ So.3d __, __.

A court's effort to determine legislative intent "begins with the language of the statute itself." Arabie v. CITGO Petroleum Corp., 2010-2605, p. 4 (La. 3/13/12), 89 So.3d 307, 312. "When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE art. 9. But, if a statute's meaning appears doubtful or its language can reasonably be interpreted in more than one manner, "courts must search deeper to discover legislative intent." Burnette v. Stalder, 2000-2167, p. 7 (La. 6/29/01), 789 So.2d 573, 577. If a law is

ambiguous, it "must be interpreted as having the meaning that best conforms to [its] purpose...." LA. CIV. CODE art. 10.

LUTPA generally declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405. Section 51:1406(1) provides that LUTPA "shall not apply to," *inter alia*, "actions or transactions subject to the jurisdiction of ... the insurance commissioner" of Louisiana. Section 2 of the Louisiana Insurance Code proclaims that "[i]nsurance is an industry affected with the public interest and it is the purpose of this Code to regulate that industry in all of its phases," and creates "the office of the commissioner of insurance" to "administer the provisions of this Code." LA. REV. STAT. § 22:2(A)(1). The Insurance Code separately bans "any trade practice which is defined in [the Insurance Code] to be an unfair method of competition or an unfair or deceptive act or practice...." LA. REV. STAT. § 22:1963. A neighboring section of the Insurance Code lists 28 practices which "are declared to be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance." LA. REV. STAT. § 22:1964.

It is apparent from Louisiana's statutory scheme that LUTPA's insurance exclusion is designed to carve out the business of insurance, which is governed separately by its own title of the Louisiana Code. This carve-out is as broad as the insurance commissioner's regulatory authority to implement the provisions of the Insurance Code, which one court has described as "an integrated series of statutes" enacted to regulate "virtually all aspects of the insurance industry." Lawyer's Realty Corp. v. Peninsular Title Ins. Co., 428 F. Supp. 1288, 1292 (E.D. La. 1977) (citations omitted).

- 8 -

The insurance commissioner's authority is broad enough to encompass the practices Plaintiffs complain about. The thrust of their LUTPA claims is that Defendants have demanded that they make repairs on the cheap, and have withheld payment when Plaintiffs insisted on using higher quality but more expensive parts (Parker complaint, ¶ 168; Southern Collision complaint, ¶ 62). If an insurer adopted a practice of regularly refusing to pay the amount reasonably necessary to repair a damaged vehicle, it would violate the "unfair claim settlement practices" provision of Louisiana's Insurance Code. LA. REV. STAT. § 22:1964(14)(f), (h). In such a case, the insurance commissioner could launch an investigation of the insurer and, after providing notice and the opportunity for a hearing, impose civil penalties and enter a cease and desist order. See LA. REV. STAT. § 22:1967-70. Because the insurance commissioner has the authority to investigate and punish the practices alleged in Plaintiffs' complaints, those practices cannot form the basis for a private civil action under LUTPA.[2]

Plaintiffs argue that Cramer v. Association Life Ins. Co., 569 So.2d 533, 536 (La. 1990) supports a narrower reading of LUTPA's exclusion provision. In Cramer, the Louisiana Supreme Court considered the scope of federal preemption under the Employment Retirement Income Security Act ("ERISA"), which generally preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), subject to certain exceptions (called "savings clauses"). The Cramer court construed the scope of the exception for state laws "which regulate[]

---

[2] The state and federal courts in Louisiana have almost uniformly rejected LUTPA claims against insurance companies based on the exemption in § 51:1406(1). See, e.g., Comeaux v. Pennsylvania General Ins. Co., 490 So.2d 1191, 1193 (La. App. 3d Cir. 1986); Center for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of Louisiana, Inc., No. CIV.A. 10-4346, 2014 WL 1276503, at *7 (E.D. La. 2014); West v. Fireman's Fund Ins. Co., 683 F. Supp. 156, (M.D. La. 1988); LeMarie v. Lone Star Life Ins. Co., No. 00-0570, 2000 WL 739277, at *4 (E.D. La. 2000) (all dismissing LUTPA cases addressing practices in the insurance industry).

insurance." Id.; § 1144(b)(2)(A).  Following the lead of the United States Supreme Court, the Louisiana Supreme Court applied a three-factor test to conclude that the disputed provision in Cramer, although part of the insurance code, did not "regulate[] insurance" and was therefore pre-empted.[3]  569 So.2d at 537 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987)).  Plaintiffs argue that this Court should use the same three-factor test in construing the insurance exception to LUTPA.

     Plaintiffs' argument is at odds with both the language and purpose of § 51:1406. The statute defines the exemption by reference to the insurance commissioner's jurisdiction, which § 22:2(A)(1) defines as "administer[ing] the provisions of" the Insurance Code.  If Cramer was the test for determining the scope of the commissioner's jurisdiction, then part of the Insurance Code itself (including the provision held preempted in Cramer) would be outside of the commissioner's jurisdiction.  Additionally, ERISA and LUTPA were enacted by different legislative bodies to address different concerns.  Cf. LA. CIV. CODE. art. 10 (ambiguous statutes "must be construed as having the meaning that best conforms to the purpose of the law").  Construing the scope of the insurance commissioner's regulatory authority (and thus the insurance exception to LUTPA) narrowly would prevent the commissioner from regulating the insurance business "in all of its phases."[4]  LA. REV. STAT. § 22:2(A)(1).

---

[3] The criteria the court considered are: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. Cramer 569 So.2d at 537.

[4] ERISA's savings clause by contrast, is construed narrowly, consistent with that law's purpose of promoting uniformity and thus predictability in the administration of employee benefit plans. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98-99 (noting floor statement by sponsor of ERISA that federal preemption is "the crowning achievement of this legislation" because it would "eliminat[e] the threat of conflicting and inconsistent State and local regulation").

- 10 -

Because Plaintiffs' unfair trade practices claims concern "actions" and "transactions" that fall within the jurisdiction of the state insurance commissioner, I conclude that the conduct is not actionable under LUTPA.  Accordingly, I recommend that the Court dismiss Count I of both complaints with prejudice.

Count II: Unjust Enrichment

Several Defendants in Parker argue that Plaintiffs failed to allege that they have been enriched (Doc. 70 at 19).  Plaintiffs do not address this argument in their response (Doc. 103 at 22).  Given Plaintiffs' failure to rebut this argument, I recommend dismissal of Count II of the Parker complaint on this ground.  It is not the Court's job to do a party's research.  See Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990).

I also recommend dismissal of this count of the Parker complaint based on Plaintiffs' allegations that "Defendants" entered into DRP agreements "with individual Plaintiffs" which included "concessions of price" as well as "a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going market rate in the market area." (Parker complaint, ¶¶ 101-03, 110). Based upon these assertions, I conclude that the complaint alleges contracts between Plaintiffs and Defendants, and therefore, as pled, Plaintiffs' unjust enrichment claim fails. See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569, 572 (La. 1989) ("[T]he existence of a claim on an express or implied contract precludes application of [unjust enrichment], for there does not exist one of the latter's requirements, that there be no other remedy available at law....").

Defendants in Southern Collision raise only one grounds for dismissal, which they incorporate by reference from their motion in the Parker case (Southern Collision, Doc. 27 at 2).  They argue that Plaintiff's unjust enrichment claim must be dismissed because the

- 11 -

complaint alleges that there are DRP agreements between the parties (Parker, Doc. 76 at 10). Plaintiff responds that the complaint contains no allegation that it had a DRP agreement with State Farm (Southern Collision, Doc. 27 at 6).

Unlike the complaint in Parker, the Southern Collision complaint does not contain an express allegation that a contract existed between Plaintiff and Defendants (Compare Southern Collision complaint, ¶ 10 ("Defendants exert control over Plaintiff ... by way of entering program agreements with *the individual auto repair shops*."), with Parker complaint, ¶ 101 ("Defendants exert control over Plaintiff ... by way of entering program agreements with *individual Plaintiffs*.") (emphasis added)). But, other paragraphs of the Southern Collision complaint can only be plausibly understood to mean Plaintiff has a DRP with State Farm (Southern Collision complaint, ¶¶ 12, 16, 18, 46). For example, paragraph 46 alleges:

> "Defendant State Farm also imposes restrictions on the Plaintiff's ability to obtain and utilize quality replacement parts and materials. As part of its DRP agreement, State Farm asserts it has the unilateral authority to enter into separate agreements with manufacturers, distributors or suppliers of automotive parts, supplies or materials."

(Southern Collision complaint, ¶ 46). Because the only plausible inference to be drawn from these allegations is that Plaintiff has a DRP agreement(s) with Defendants, I recommend that Count II of the Southern Collision complaint also be dismissed without prejudice.

### Count III: Tortious Interference with Business Relations

In Count III, Plaintiffs attempt to assert claims for tortious interference with business relations. They allege that Defendants have "repeatedly engaged in malicious actions and a course of conduct designed to interfere with and injure the Plaintiffs'

business relations and prospective business relations" by "steer[ing] and attempt[ing] to steer customers away from the Plaintiffs' respective businesses through … misrepresentations of facts, failure to verify facts damaging or tending to cause damage to the Plaintiffs' business reputations before conveying the same to members of the public implications of poor quality work, poor quality efficiency, poor business ethics and practices, and unreliability." (Parker complaint, ¶ 177; Southern Collision complaint, ¶ 71).

Louisiana recognizes a cause of action for tortious interference with business relations. Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10 (5th Cir.1992). To prevail on such a claim, the plaintiff must ultimately show "'by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.'" Junior Money Bags, 970 F.2d at 10 (quoting McCoin v. McGehee, 498 So.2d 272, 274 (La. App. 1st Cir. 1986)). General allegations that the plaintiff lost customers or that a defendant's actions affected the plaintiff's business interests will not suffice. Allstate Ins. Co. v. Community Health Center, Inc., No. CIV.A. 08-810, 2014 WL 1689701, at *30-31 (M.D. La. 2014); Bogues v. Louisiana Energy Consultants, Inc., 46,434, p. 11 (La. App. 2d Cir. 8/10/11), 71 So. 3d 1128, 1135. The plaintiff "must show that the [defendant] actually prevented him from having dealings with an *identifiable* third party." Allstate, 2014 WL 1689701, at *30-31 (emphasis added). Despite its "ancient vintage," Louisiana courts view the tort "with disfavor," and have limited recovery by requiring plaintiffs to prove actual malice. JCD Marketing Co. v. Bass Hotels & Resorts, Inc., 2001-1096, p. 11 (La. App. 4th Cir. 3/6/02), 812 So.2d 834, 841.

Defendants ask the Court to dismiss the tortious interference claims on the ground that the conduct alleged was motivated by profit, rather than malice (i.e., intent to injure).

Louisiana courts have explained that the malice element requires that the plaintiff show that the defendant's conduct was motivated by "'spite,'" "'ill will,'" or "'bad feelings,'" rather than the pursuit of profits. Bogues, 46,434, p. 12, 71 So.3d at 1135; (quoting JCD Marketing, 2001-1096, p. 12, 812 So.2d at 841). Louisiana, unlike some other states, requires the plaintiff to show malice, and does not appear to allow tortious interference claims based on improper means alone. Cf. A & E Auto Body, 2015 WL 304048, at *8 (under Florida law, "privilege" to interfere in relationships to protect one's self interest is qualified by duty not to use improper means); Capitol Body Shop, Inc. v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6000, 2015 WL 859477, at *7 (Feb. 27, 2015) (noting that Mississippi law is unclear whether improper means alone can support tortious interference claim); Alpine Straightening Systems v. State Farm Mutual Automobile Ins. Co., Case No. 6:14-cv-6003, Doc. 95 at 9 & n. 3 (M.D. Fla. Mar. 5, 2015) (under Utah law, "improper means" is required to show tortious interference; "improper purpose" is neither necessary nor sufficient (citing Eldridge v. Johndrow, 2015 UT 21, ¶ 71)). Because of Louisiana's strict malice requirement, Defendants' argument is more persuasive in these two cases than in cases from some other states. But, the Court need not decide whether Plaintiffs have pled facts raising a plausible inference of malice, since dismissal is warranted on other grounds.

In A & E Auto Body, the Court dismissed the plaintiffs' tortious interference claims because the generalized allegations in that case could not support a tortious interference claim under Florida law:

> [W]hile a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers, no cause of action exists for tortious interference with a business's relationship to the community at large. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 815

> (Fla.1994). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id. The Amended Complaint cannot plausibly be read to allege that the individuals to whom the Defendants made their misrepresentations about poor quality work and the like had actual or identifiable understandings or agreements with one or more of the Plaintiffs that likely would have been completed but for those misrepresentations.  So far as the Amended Complaint discloses, the insureds to whom the Defendants made misrepresentations never had any contact with the repair shop that was being disparaged, much less an "actual and identifiable understanding or agreement." See e.g., Sarkis v. Pafford Oil Co., 697 So.2d 524, 526 (Fla. 1st DCA 1997) (affirming dismissal with prejudice of tortious interference claim for failure to identify the customers who were the subject of the alleged interference).

2015 WL 304048, at *8.

Based upon my review of the case law, I conclude that Louisiana courts would reach the same result here.  Numerous federal and state court cases recognize the narrowness of a claim for tortious interference with business relations in Louisiana. Junior Money Bags, 970 F.2d 1, 11 (noting that tortious interference with business is a "very limited form of recovery" in Louisiana); Marshall Investments Corp. v. R.P. Carbone Co., No. CIV.A. 05-6486, 2006 WL 2644959, at *5 (E.D. La. 2006); CheckPoint Fluidic Systems Int'l, Ltd. v. Guccione, No. CIV.A. 10-4505, 2011 WL 3268386, at *11 (E.D. La. 2011); JCD Marketing, 2001-1096, p. 11, 812 So.2d at 841.  And Louisiana, like Florida, defines the elements of tortious interference with business relationships in terms of specific, individual relationships between the plaintiff and third parties in which the defendant interferes.  See Bogues, 46,434, p. 11, 71 So.3d at 1135 ("[I]t is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party.");

- 15 -

Henderson v. Bailey Bark Materials, 47,946, p. 8 (La. App. 2d Cir. 4/10/13), 116 So.3d 30, 37; Allstate, 2014 WL 1689701, at *30-31 (same); Brand Coupon Network, LLC v. Catalina Marketing Corp., No. CIV.A. 11-00556-BAJ, 2014 WL 6674034, at *10 (M.D. La. 2014) (dismissing plaintiff's claim where the complaint failed "to set forth specific facts to show that [defendant] improperly influenced any identifiable consumer packaged goods manufacturers or other third parties to prevent them from doing business with [plaintiff]").

Plaintiffs have not alleged facts showing that Defendants "prevented" any identifiable third party from entering into a business relationship with any Plaintiff that would have been consummated but for the interference. Indeed, as in the Florida case, "[s]o far as the ... Complaint[s] disclose, the insureds to whom the Defendants made misrepresentations never had any contact with the repair shop that was being disparaged." A & E Auto Body, 2015 WL 304048, at *8. Louisiana law requires a plaintiff to show more than generalized interference in the plaintiff's business interests; yet, that is precisely the basis of the claims being asserted in these cases. (Parker complaint, ¶ 177 (alleging that defendants "steered and attempted to steer" customers away from Plaintiffs' respective businesses by relaying damaging information to "members of the public"); Southern Collision complaint, ¶ 71 (same)). Accordingly, I recommend in each of these cases that Count III be dismissed without prejudice.

### Count IV: Quasi-Estoppel

Louisiana courts describe "quasi-estoppel" as a legal doctrine which "operates to prevent a party to an agreement from accepting benefits under that agreement and then attempting to deny its validity." Tastee Belle Chasse, Inc. v. Armand, No. CIV. A. 00-1896, 2001 WL 245784, at *2 (E.D. La. 2001). Under the doctrine of "quasi estoppel," a party who accepts the benefit of a transaction may not subsequently take an inconsistent

position to avoid the corresponding obligations or effects.  In re Soule, No. CIV.A. 04-0914, 2004 WL 2314524, at *2 (E.D. La. 2004).

As I explained in my report and recommendation in the Mississippi case, which was adopted by the Court without objection, quasi-estoppel "is not a cause of action or independent basis for relief."  Capitol Body Shop, 2015 WL 859477, at *7.  It simply "prevent[s] another party from taking a particular position in litigation."  Id. at 11 (citing T.C.B. Construction Co. v. W.C. Fore Trucking, Inc., 134 So. 3d 752, 764 (Miss. App. 2012)); see also Brewer Body Shop v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6002, Doc. 78 at 7 (M.D. Fla. Mar. 2, 2005).  Plaintiffs have failed to identify any authority–binding, persuasive, or otherwise–for the proposition that quasi-estoppel is a cause of action in Louisiana, and the Court's research has failed to uncover any such cases.  Therefore, I recommend that the Court dismiss Count IV of both complaints with prejudice.

### Count V: Conversion

Under Louisiana law, "conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time."  South Louisiana Ethanol, LLC v. Messer, No. CIV.A. 11-2715, 2013 WL 2458725, at *2 (E.D. La. June 6, 2013) (citations and internal quotations omitted).  Although money may be converted under Louisiana law, the Louisiana Supreme Court has explained that "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money."  In re Wittenbrink, 2003-0425, p. 22 (La. 6/27/03), 849 So. 2d 18, 22 (citation omitted).  The elements of a claim for conversion of money are: (1) the plaintiff owned or had the right to possess funds that were misused by the defendant; (2) the misuse was

inconsistent with the plaintiff's rights of ownership; and (3) the misuse constituted a wrongful taking of the funds. Chrysler Credit Corp. v. Whitney National Bank, 798 F. Supp. 1234, 1236 (E.D. La. 1992).

Plaintiffs allege that they "performed necessary work and expended appropriate labor and materials for which the Defendants have refused to make full payment" and, therefore, the Defendants are "wrongfully in possession of monies which should have been expended to pay repair bills of [Defendants'] policyholders." (Parker complaint, ¶¶ 185, 187; Southern Collision complaint, ¶¶ 79-80). Plaintiffs' complaints do not contain any allegations of fact suggesting that Defendants misused funds belonging to Plaintiffs; that Defendants somehow used Plaintiffs' funds in a way that was inconsistent with Plaintiffs' rights or ownership; or that Defendants wrongfully took funds that belonged to Plaintiffs. All the complaints allege is a failure by Defendants to pay money for labor and services. Since the failure to pay a debt does not amount to a conversion, I recommend that Plaintiffs' conversion claims be dismissed without prejudice.

### Counts VII and VII: Federal Antitrust Claims

Plaintiffs' antitrust claims are indistinguishable from the claims asserted by the plaintiffs in A & E Auto Body. On January 21, 2015, the Court dismissed those claims without prejudice, with leave to amend. A & E Auto Body, 2015 WL 304048, at *9-12. Because the Court's reasoning in A & E Auto Body applies to Plaintiffs' complaints in these cases, I recommend that Counts VII and VIII be dismissed without prejudice, for the reasons stated in the dismissal order in A & E Auto Body.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the motions to dismiss in Cases No. 6:14-cv-6004 and 6:14-cv-6005 be **GRANTED** in part and **DENIED**

in part, that the complaint in each case be **DISMISSED**, with prejudice as to Counts I and IV of each complaint, and without prejudice as to the remaining counts, and that Plaintiffs be allowed 21 days leave to amend their complaints.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 10, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record