**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

A & E AUTO BODY, INC., et al.,

     Plaintiffs,

v.                                                    Case No: 6:14-md-2557-Orl-31TBS

21ST CENTURY CENTENNIAL
INSURANCE COMPANY, et al.,

     Defendants.

_____

**OPINION AND ORDER**

    **I.**      **Preface**

    This is an MDL case involving two dozen suits, consolidated for pretrial purposes, in which collision repair shops have accused most of the automobile insurers in their states of conspiring to suppress the reimbursement rates for collision repairs in violation of Section I of the Sherman Antitrust Act and various state laws.

    The first of these suits was filed in this Court on February 24, 2014.   (Case No. 6:14-cv-310).   The initial complaint in that matter was dismissed on June 11, 2014.   An amended complaint was filed on June 28, 2014.   On August 8, 2014, this MDL was created and four cases were transferred to this Court:   one from Mississippi (Case No. 6:14-cv-6000); one from Indiana (Case No. 6:14-cv-6001); one from Tennessee (Case No. 6:14-cv-6002); and one from Utah (Case No. 6:14-cv-6003).

    Following oral argument, the amended complaint in the Florida case was dismissed.   A second amended complaint was filed in the Florida case on February 11, 2015.   Motions to dismiss that second amended complaint are pending.   With respect to the Mississippi, Indiana,

Tennessee and Utah cases, Magistrate Judge Smith issued Reports and Recommendations (henceforth, "Reports") recommending the dismissal of those complaints.   Plaintiffs' objections to those Reports were overruled and the complaints were dismissed.   Amended complaints were filed and are the subject of pending motions to dismiss.

Nineteen other tag-along cases have been transferred to this Court.   Two of those were originally filed in Louisiana: Case No. 6:14-cv-6004 and Case No. 6:14-cv-6005.   On March 10, 2015, Magistrate Judge Smith recommended that the complaints in the Louisiana cases be dismissed.   This Court overruled Plaintiffs' objections to that recommendation and dismissed the complaints.   Plaintiffs filed amended complaints and motions to dismiss are pending.

On June 3, 2015, Magistrate Judge Smith issued a 59-page Report (Doc. 192 in Case No. 6:14-md-2557) (henceforth, the "June 3 Report") with respect to 14 cases, originally filed in 12 different states, all of which had pending motions to dismiss:[1]   Case No. 6:14-cv-6006 (Arizona); Case No. 6:14-cv-6007 (Michigan); Case No. 6:14-cv-6008 (Pennsylvania); Case No. 6:14-cv-6009 (Alabama); Case No. 6:14-cv-6010 (California); Case No. 6:14-cv-6011 (Illinois); Case No. 6:14-cv-6012 (New Jersey); Case No. 6:14-cv-6013 (New Jersey); Case No. 6:14-cv-6014 (Oregon); Case No. 6:14-cv-6015 (Washington); Case No. 6:14-cv-6018 (Kentucky); Case No. 6:14-cv-6019 (Virginia); Case No. 6:14-cv-6020 (Pennsylvania); and Case No. 6:15-cv-6022

---

[1] Cases not included in the June 3 Report are:

Case No. 6:14-cv-6016 is a class action filed in the Northern District of Illinois, which was transferred to this Court on December 17, 2014.   Motions to dismiss the amended complaint in that case are pending.

Case No. 6:14-cv-6017 was originally filed in the Middle District of Louisiana.   There is a motion pending to remand this case to state court.

Case No. 6:15-cv-6021, originally filed in the Northern District of Ohio, was closed on March 20, 2015.

(Missouri).   Judge Smith recommended that all of the claims be dismissed without prejudice except for Plaintiffs' claims for quasi estoppel, which he recommended dismissing with prejudice. On June 29, 2015, Plaintiffs filed an omnibus objection (Doc. 205 in Case No. 6:14-md-2557) (henceforth, the "Omnibus Objection") to the June 3 Report.   Defendants have responded to the Omnibus Objection[2] and the matter is ripe for this Court's consideration.

## II.    Standard of Review

A district judge may designate a magistrate judge to submit to the court proposed findings of fact and recommendations for the disposition of, *inter alia*, motions to dismiss.   28 U.S.C. § 636(b)(1)(B).    A party may file written objections to such proposed findings and recommendations.   28 U.S.C. § 636(b)(1).   A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   *Id.*

## III.    The June 3 Report

### a.  Group Pleading

At the outset of the June 3 Report, Judge Smith discusses the issue of group pleading, a problem that has plagued these cases from the outset.   Throughout their pleadings, the Plaintiffs make collective allegations about the conduct of "Defendants," even in scenarios (such as the alleged steering of an insured away from one of the Plaintiffs to a lower-priced shop) where it would seem that any Defendant doing so would have acted singly – even if every Defendant sometimes steered its own insureds.   After noting that group pleading is permissible in some

---

[2] The various Defendants' responses to the Omnibus Objection may be found at Doc. 206-219 in Case No. 6:14-md-2557.   The GEICO Defendants also filed an objection to the June 3 Report.   (Doc. 204 in Case No. 6:14-md-2557.)

instances, Judge Smith concludes that to satisfy the notice requirement of Fed.R.Civ.P. 8(a), "at a minimum, Plaintiffs should allege sufficient facts specific to each Defendant, or at least to each corporate family of Defendants,[3] to tie that Defendant to the wrongdoing alleged." (June 3 Report at 5-11).

### b. Antitrust

After addressing group pleading, Judge Smith then assesses the antitrust claims raised in these 14 cases. He concludes that the price fixing and group boycott claims are indistinguishable from those that had been asserted in the Florida case and should be dismissed for the same reasons expressed by this Court in its order (Doc. 291 in Case No. 6:14-cv-310) dismissing the amended complaint in that action. (June 3 Report at 12-13). Judge Smith also concludes that the state law antitrust claims in the Michigan, New Jersey, Washington and Virginia cases should be dismissed for failure to plausibly plead the existence of an agreement between the Defendants. (June 3 Report at 14).

### c. Unjust Enrichment and Quantum Meruit

At pages 15-33 of the June 3 Report, Judge Smith provides an extensive analysis of the flaws in the Plaintiffs' claims for unjust enrichment and quantum meruit. After summarizing the historic development of these equitable remedies, he sets forth the basic elements for an unjust enrichment claim – a showing that the defendant obtained a benefit at the plaintiff's expense and that the defendant's enrichment was "unjust" or "inequitable." (June 3 Report at 22).

With respect to the benefit requirement, this Court held in the Florida case that the Plaintiff auto body repair shops were conferring a benefit on their customers (the insureds) and not the

---

[3] GEICO and related defendants have filed a partial objection (Doc. 204 in Case No. 6:14-md-2557) to the Report claiming, among other things, that Judge Smith's dicta regarding the grouping of corporate families is inappropriate. *See* Section IV, *infra.*

insurance company that paid for the repairs.   (Doc. 291 at 9 in Case No. 6:14-cv-310).   In the June 3 Report, Judge Smith noted that some states define "benefit" more broadly in this context. Because the courts are divided on this issue, he assumes for purposes of his analysis that a benefit has been conferred on the insurance company.   Nevertheless, he recommends dismissal of the unjust enrichment claims on the grounds that "the Plaintiffs have failed to allege facts showing that it would be unjust to allow Defendants to retain any benefit Plaintiffs may have conferred." (June 3 Report at 24).   Quoting from the Restatement (Third) of Restitution and Unjust Enrichment, he notes that "there is no liability in restitution for an unrequested benefit voluntarily conferred, unless the circumstances of the transaction justify the claimant's intervention in the absence of a contract."   (June 3 Report at 24).   Thus, those who confer a benefit officiously, with no reasonable expectation of compensation, are not entitled to this equitable (quasi-contractual) relief.   And the fact that the repair shops have contracted with the insureds, rather than the insurers, is not justification for failing to bargain with the insurers, because a "plaintiff is not entitled to employ the legal fiction of quasi-contract to substitute one promisor or debtor for another.   (June 3 Report at 27).

Judge Smith also discusses the substantial overlap between unjust enrichment and quantum meruit, noting that in several of the states whose laws are at issue here, there is no substantive difference between the two.   (June 3 Report at 28).   As to those that recognize a distinction – Alabama, Illinois, New Jersey, Kentucky, Washington and Virginia – he concludes that Plaintiffs have failed to state an actionable claim, generally because they have not alleged that the Defendants (as opposed to the Defendants' insureds) requested the work for which compensation (or additional compensation) is now sought.   (June 3 Report at 29-33).   Accordingly, he recommends dismissal of all of the quantum meruit claims.

### d.  Tortious Interference

All Plaintiffs in these 14 cases assert claims for tortious interference with business relationships or prospective advantage.   Although the elements of these claims vary slightly from state to state, the basic fabric is the same – the plaintiff must show that the defendant intentionally and improperly interfered with the plaintiff's prospective contractual relationship and that, as a result, plaintiff failed to reap the benefit of that relationship.   (June 3 Report at 33-34).

In the June 3 Report, Judge Smith analyzes the differences between a number of states whose laws are at issue in the way they deal with the "improper interference" element of the tort. Some allow recovery where the defendant has an improper purpose or employs improper means; others utilize the multi-factor test outlined in the Restatement (Second) of Torts § 767 to determine whether interference is improper.[4]   (June 3 Report at 35).   Other states look to "justification" or "privilege" to determine whether interference is improper or not.   (June 3 Report at 36).   As to all of the states but one at issue here, he concludes that well-pled allegations that

_____

[4] Section 767 sets forth the following seven factors to be considered:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979).

Defendants made false and defamatory statements about Plaintiffs' businesses are sufficient to survive a motion to dismiss.[5]   (June 3 Report at 37).

Magistrate Judge Smith also addresses the level of specificity required by each of these 12 states to identify the prospective contractual relationship that is allegedly being interfered with. Some of the states' laws allow a claim based on interference with an identifiable class of customers, while others require that a plaintiff allege interference with specific, identifiable third parties.   (June 3 Report at 38).   But, even in those states that allow a class identification, Plaintiffs must still plead sufficient facts to satisfy the requirements of Rule 8(a) – a requirement that implicates the group pleading problem discussed *supra*.   Consistent with this Court's prior orders, a general allegation that some unidentified Defendants – or all Defendants – interfered with some unidentified customers of some unnamed plaintiff does not satisfy the pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   Because the Plaintiffs' allegations are too vague to satisfy Rule 8(a), Judge Smith recommends dismissal of all the tortious interference claims.   (June 3 Report at 39).

### e.  Quasi-estoppel

In twelve of these cases (all but the California and Washington cases), Plaintiffs assert claims for "quasi estoppel."   In the June 3 Report, Judge Smith notes that Plaintiffs have not identified a single case in any jurisdiction holding that quasi estoppel is recognized as a cause of

---

[5]  The sole exception, Alabama, requires as an element of the tort that the Defendant be a "stranger" to the interfered-with relationship.   (June 3 Report at 37).   Relying on *Kirby's Spectrum Collision, Inc. v. GEICO*, 744 F. Supp. 2d 1220 (S.D. Ala. 2010), Judge Smith recommends that the tortious interference claim in the Alabama case be dismissed on this basis. (June 3 Report at 37).

action.   Accordingly, Judge Smith recommends that the quasi estoppel claims be dismissed with prejudice.

### f.  Conversion

In nine of the cases that are the subject of the June 3 Report, the Plaintiffs have asserted claims for conversion.   In seven of those nine cases – all but the Michigan and California cases, Plaintiffs concede that their conversion claims should be dismissed.   (June 3 Report at 43).   With respect to the two remaining cases, Judge Smith recommends dismissal because the Plaintiffs have alleged only a failure to pay a debt rather than identifying specific money or property , as required to support a claim of conversion.

### g.  Insufficient Payment

Plaintiffs in the Michigan, Pennsylvania, and Illinois assert claims based on an alleged breach by the Defendants of a legal obligation to pay for necessary and proper repairs.[6]   With respect to the Michigan case, Judge Smith recommends dismissal because the Plaintiffs failed to identify the source of the alleged duty to pay for such repair, and he found no support for a cause of action for breach of an unspecified legal duty.   (June 3 Report at 46).   The Pennsylvania Plaintiffs asserted their state's Unfair Insurance Practices Act as the source of this duty, but Judge Smith found that no private cause of action existed under that statute.[7]   (June 3 Report at 47). For their part, the Illinois Plaintiffs attempted to rely on duties arising from the Illinois Consumer Fraud Act and the Illinois Uniform Deceptive Trade Practices Act.   (June 3 Report at 47).   Judge

---

[6]   The Alabama Plaintiffs withdrew a similar claim after Defendants filed a motion to dismiss.   (Doc. 26 at 5 in Case No. 6:14-cv-6009).   Their claim will therefore be dismissed.

[7]   The Pennsylvania Plaintiffs also argued that violations of this duty would provide the basis for a cause of action under the state's Unfair Trade Practices and Consumer Protection Law – an argument implicitly rejected by Judge Smith.   (June 3 Report at 47).

Smith found that the attempt was unsuccessful in part because of a failure to allege that Defendants engaged in any deceptive act or practice and in part because of the group pleading problem.   (June 3 Report at 49).

### h.  State Laws Banning Unfair Trade Practices and Unfair Competition

Finally, Judge Smith analyzed the claims in the California, Oregon and Washington cases for alleged violations of laws banning unfair trade practices and unfair competition.   With respect to the California Unfair Competition Law ("CUPL"), which proscribes any "unlawful, unfair or fraudulent business act or practice," Judge Smith found that the Plaintiffs had failed to adequately plead that Defendants had engaged in unlawful or fraudulent acts, and that any "unfairness" claim should be dismissed because of the Plaintiffs' group pleading.[8]   (June 3 Report at 49-52).

Along similar lines, Judge Smith recommends dismissal of the Oregon Unfair Trade Practices Act ("OUTPA") claim because the sole Plaintiff in the Oregon case attributed wrongdoing collectively to every Defendant without asserting the existence of an agreement or common scheme that would connect their behavior.   (June 3 Report at 53).   (However, he rejected (at least for now) the Defendants' argument in favor of dismissal with prejudice that OUTPA only permitted claims by consumers and therefore the Oregon Plaintiff lacked standing.[9] (June 3 Report at 56).)   And Judge Smith reached the same conclusion as to the claim in the Washington case under that state's Consumer Protection Act, because of the group pleading

---

[8]  Judge Smith also noted that the California plaintiffs are not "consumers" or "competitors" of the Defendant insurance companies; rather, they are businesses in one industry (auto repair) alleging harm caused by anti-competitive practices in another industry (insurance). Because of this distinction, Judge Smith concluded it was unclear what test the Court should apply to determine whether a particular act was "unfair" for purposes of the CUPL.

[9]  Judge Smith noted that the statute itself does not expressly limit claims to consumers, and no Oregon state court has addressed the point.   (June 3 Report at 53).

problem and because Judge Smith found that the Washington complaint was a shotgun pleading. (June 3 Report at 58).

IV.     **Plaintiffs' Objections**

Before this Court addresses the Plaintiffs' objections to the June 3 Report, it should be noted that the Plaintiffs do not object to the dismissal without prejudice of their antitrust claims – federal and state – or the dismissal with prejudice of their quasi estoppel claims.   Similarly, Plaintiffs have not objected to Judge Smith's recommendation of dismissal in regard to the remaining conversion claims (*i.e.*, those in the Michigan and California cases) and the California, Oregon and Washington statutory claims**.**   And finally, the Plaintiffs have not objected to the dismissal of the insufficient payment claims that had been asserted in the Pennsylvania and Washington cases.   Thus, all those claims will be dismissed per Judge Smith's recommendation.

As for the objections that the Plaintiffs do raise, 40 of the 45 pages in the Plaintiffs' brief are devoted to argument regarding the unjust enrichment and quantum meruit claims.   In the remaining pages, the Plaintiffs (1) continue to assert that group pleading is not a basis for dismissal of their tortious interference claims and (2) take issue with Judge Smith's recommendation of dismissal of the Michigan insufficient payment claim.   These objections will be addressed in turn.

a.  **Unjust Enrichment**

As noted above, Judge Smith concluded that the unjust enrichment claims should be dismissed because the Plaintiffs had failed to allege facts showing that it would be unjust to allow Defendants to retain any benefits that might have been conferred on them by the Plaintiffs.   (June 3 Report at 24).   In doing so, he cited to the proposition – reflected in the Restatement (Third) of Restitution and Unjust Enrichment – that there is no liability in restitution for an unrequested

benefit voluntarily conferred, absent circumstances justifying the claimant's intervention in the absence of a contract.   (June 3 Report at 24).   He also noted that some states require that unjust enrichment plaintiffs show a reasonable expectation of compensation.   (June 3 Report at 25).

With this as the baseline, Judge Smith concluded that the Plaintiffs' pleadings showed them to be, at best, officious volunteers, performing repair services for which they now sought additional compensation without any attempt to bargain with Defendants and without a reasonable expectation of additional compensation from them.     (June 3 Report at 27).

Plaintiffs' objection to Judge Smith's conclusions regarding these claims is difficult to follow, but may be summarized as follows:

1.   Plaintiffs are not required to negotiate or discount their prices.   (Omnibus Objection at 2-4).

2.   Plaintiffs were unable to negotiate with the Defendants because it would have been futile.   (Omnibus Objection at 4-7).

3.   Plaintiffs were operating under a duty to perform full, complete and safe repairs. (Omnibus Objection at 7-9).

4.   Plaintiffs are not volunteers because they were hired by their customers to repair automobiles and have a reasonable expectation of payment from Defendants. (Omnibus Objection at 9-12).

5.   Plaintiffs have a reasonable expectation of payment from Defendants for all the services they provide to their customers, not just the ones the Defendants wish to pay for.   (Omnibus Objection at 12-13).

6.   Defendants' failure to pay the reasonable value of Plaintiffs' services under these circumstances is unjust.   (Omnibus Objection at 14-17).

Some of the Plaintiffs' assertions appear to be true, but none of them will bear the weight the Plaintiffs wish to place upon them.   As Judge Smith pointed out, there are very few circumstances under which the law will permit someone without a contract to first provide services and then compel payment.   Those limited circumstances can include scenarios where the failure to negotiate is attributable to such things as a pre-existing duty to provide the services. But the law of unjust enrichment does not permit a person to simply perform work and then demand payment.   So while it is true that the Plaintiffs are under no obligation to negotiate with the Defendants (Objection 1), they must demonstrate that they should be paid even where they did not do so. [10]

This round of pleadings does not satisfy this obligation.   The Plaintiffs have not pled that they could not negotiate, merely that they did not believe such negotiations would be fruitful; they have not pled that they were under any duty that rendered them unable to turn down the jobs for which they now seek additional payment.   And so on.

Reduced to its essence, Plaintiffs' position is that they are entitled to obtain what they believe to be the reasonable value of their services, and that Defendants are obligated to pay that amount, regardless of the price agreed upon between Plaintiffs and their customers at the outset of the transaction.   Plaintiffs cite no law in support of this novel theory.   Instead, they simply argue that this Court is obliged to accept their well-pleaded factual allegations as true and draw reasonable inferences from those facts in the light most favorable to Plaintiffs.   (Omnibus Objection at 17).   While this is a correct statement of law, it is also true that these well-pleaded facts must state a reasonably plausible claim for relief.   *See Iqbal*, *supra*.   And, considering the

---

[10] Or more precisely, that they should be paid more than the amount they knew the Defendants were willing to pay at the time they agreed to do the work.

facts in a light favorable to Plaintiffs, their complaints fail to state a plausible claim for unjust enrichment, for the reasons already expressed by Judge Smith.   The unjust enrichment claims will therefore be dismissed.

####    b.    Quantum Meruit

Judge Smith found that the courts of Michigan, Pennsylvania, and Arizona view quantum meruit as the equivalent of unjust enrichment, and therefore the quantum meruit claims in those cases were subject to dismissal for the same reasons as the unjust enrichment claims had been. (June 3 Report at 28).   At page 17 of the Omnibus Objection, Plaintiffs take issue with this recommendation, asserting that they should be allowed to plead quantum meruit in the alternative. While pleading in the alternative is generally acceptable, the issue here is whether the cause of action for quantum meruit in these states is functionally different from the cause of action for unjust enrichment.   The Plaintiffs have not cited any case law from Michigan, Pennsylvania, or Arizona showing that a quantum meruit claim might succeed where an unjust enrichment claim would fail, or vice versa.   As they are duplicative of the already asserted unjust enrichment claims, the quantum meruit claims in the Michigan, Pennsylvania, and Arizona cases will be dismissed.

As for the other six states in which these claims were asserted – Alabama, Illinois, New Jersey, Kentucky, Washington and Virginia – Judge Smith concluded that a separate cause of action for quantum meruit existed but that the Plaintiffs had failed to properly state a claim for relief.   As to each of these states, the Plaintiffs object to Judge Smith's recommendation of dismissal.   (Omnibus Objection at 22-40).   These specific objections will be discussed in turn.

_____

<u>Alabama</u>

Relying on the case of *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006), Judge Smith found that under Alabama law, quantum meruit allowed recovery only where a contract was implied, either in fact or in law.   (June 3 Report at 29).   To the extent the Alabama Plaintiffs' quantum meruit claim was based on a contract implied in fact, Judge Smith recommended dismissal because they had failed to allege "mutual assent to terms essential to the contract," as required under state law.   (June 3 Report at 29).   To the extent the Alabama Plaintiffs were seeking to recover based on a contract implied in law, Judge Smith found that the quantum meruit cause of action was functionally equivalent to the already asserted cause of action for unjust enrichment and should be dismissed for the same reasons that had justified dismissal of that claim. (June 3 Report at 29).

Initially, though it is not clear why, the Plaintiffs argue that under Alabama law, establishing the existence of a contract implied in fact (by showing offer, consideration, and so on) is only "an alternative to the 'usual' route of establishing a prima facie case for quantum meruit." (Omnibus Objection at 22).   In support, they cite to the following language from *Mantiply*:

> We note that no contract, whether express or implied-in-fact, is formed "without an offer, an acceptance, consideration, and mutual assent to terms essential to the contract." . . . Because no express contract or contract implied-in-fact exists between the parties, in order for Mallory to prevail on his claim based on quantum meruit he must establish that Mary Elizabeth knowingly accepted his services and that he had a reasonable expectation of being compensated for his services.

*Mantiply* at 656 (alteration in objection).   Contrary to the Plaintiffs' assertion, the quoted passage does not support the notion that the "usual" form of quantum meruit recovery involves a contract implied in law rather than one implied in fact.

Apparently relying on the foregoing text, the Plaintiffs go on to assert that they have made no claim for breach of contract and, in fact, deny the existence of any express contract between themselves and the Defendants.   (Omnibus Objection at 23).   Because of this, they continue, the authority relied on by Judge Smith is inapplicable.   But as described above, Judge Smith did not base his recommendation on the existence (or lack) of an express contract, and if any case he cited involved an express contract, he did not cite it in regard to that topic.

The Plaintiffs argue that no Alabama court has ever required a plaintiff pleading a claim for quantum meruit "to either plead or prove the existence of the elements of a contract, offer, acceptance, consideration, where no claim of breach of contract has been made."   (Omnibus Objection at 25).   But the fact that no claim for breach of contract has been made is not relevant: "Proof of an implied-in-fact contract requires the basic elements of an express contract – offer, acceptance, consideration."   Alabama Law of Damages §17:2 (6th ed.).   Thus, to the extent the Plaintiffs seek to recover in quantum meruit based on the existence of an implied-in-fact contract, Alabama law requires that they demonstrate the existence of those basic elements.   Judge Smith's recommendation – that the Plaintiffs be required to plead mutual assent to the terms of the contract – is in accord with Alabama law.

Finally, the Plaintiffs argue that Alabama courts distinguish between quantum meruit claims and unjust enrichment claims.   (Omnibus Objection at 25).   Though presented as a contradiction, this is consistent with Judge Smith's conclusion that some Alabama quantum meruit claims – those involving a contract implied in fact – differ from Alabama unjust enrichment claims, while others – those involving a contract implied in law – do not.   (June 3 Report at 29). The Plaintiffs have not cited to any Alabama cases describing a material difference between the elements of an unjust enrichment claim and the elements of a quantum meruit claim involving a

contract implied in law, and they have not cited one in which a plaintiff was permitted to pursue both theories in the same pleading over a defendant's objection.

Illinois

Judge Smith recommended dismissal of the Illinois quantum meruit claim because the Plaintiffs had failed to plead facts showing that it would be unjust to deny them compensation for any unrequested benefits they provided to the Defendants.   (June 3 Report at 29-30).   In doing so, he relied on the following language from *Stark Excavating, Inc. v. Carter Const. Services, Inc.*, 967 N.E. 2d 465, 474 (Ill.App. 2012).

> Unjust enrichment and quantum meruit actions are … similar, in that the "plaintiff must show that valuable services or materials were furnished by the plaintiff, received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying*." Hayes Mechanical, Inc. v. First Industrial, L.P.*, 812 N.E.2d 419, 426 (2004).

The Plaintiffs contend that under Illinois law,

> allegations that services were performed with the expectation of compensation therefore, that defendant benefitted from those services but failed to make full payment therefore constitutes [sic] sufficient factual allegations for establishing retention of benefits is unjust.

(Omnibus Objection at 26-27).   However, the four cases cited by the Plaintiffs in support of this proposition require that claimants allege "an unjust retention of a benefits" rather than merely, as Plaintiffs would have it, "a retention of benefits for which the Plaintiffs expect to be paid." *See Blumenthal v. Brewer*, 2014 IL App (1st) 132250, P12 (Ill. App. Ct. 1st Dist. 2014) ("In the Illinois courts, in order to state a cause of action for unjust enrichment, one need allege only that there was an unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience.") (internal quotation omitted); *Michael Reese Hosp. & Med. Ctr. v. Chicago HMO, Ltd.*, 196 Ill.

App. 3d 832, 836 (Ill. App. Ct. 1st Dist. 1990) ("To state a cause of action based on a theory of

unjust enrichment, a complaint need only allege that there was an unjust retention of a benefit, by

one party, to the detriment of another party against the fundamental principles of justice, equity,

and good conscience."); *Douglass v. Wones,* 120 Ill. App. 3d 36, 44 (Ill. App. Ct. 2d Dist. 1983)

("In an action in equity for unjust enrichment, a complaint on which recovery may be based need

only allege that there be unjust retention of a benefit, including money, by one party to the

detriment of another party, against the fundamental principles of justice, equity, and good

conscience."); *Kenneke v. First Nat. Bank of Chicago*, 65 Ill. App. 3d 10, 12 (Ill. App. Ct. 1st Dist.

1978) ("In an action in equity for unjust enrichment, a complaint on which recovery may be based

need only allege that there be unjust retention of a benefit, including money, by one party to the

detriment of another party, against the fundamental principles of justice, equity, and good

conscience.").   None of the cases cited by the Plaintiffs hold that an allegation that the claimant

provided a benefit and expects to be paid is enough, <u>standing on its own</u>, to make the defendant's

retention of the benefits unjust and thereby state a claim for unjust enrichment or quantum meruit.

*See id.*

New Jersey

Judge Smith recommended dismissal of the New Jersey quantum meruit claim because (1)

New Jersey law requires that a quantum meruit claimant's expectation of payment be reasonable

and (2) the New Jersey Plaintiffs could not have a reasonable expectation of payment of the

amounts they now seek, because the New Jersey Defendants had persistently refused to pay those

amounts in the past.   (June 3 Report at 30).   Judge Smith also noted that the New Jersey

Plaintiffs had not alleged the existence of other circumstances, such as a mistake of fact or a pre-

existing duty to do the repairs at issue, that could conceivably justify recovery of the difference

between the price the Plaintiffs wanted to charge and the price they were aware the Defendants were willing to pay.   (June 3 Report at 30-31).

The Plaintiffs argue that under New Jersey law, a reasonable expectation of payment and the reasonable value of the services provided are separate elements of a quantum meruit claim,[11] and that requiring them to show that the <u>amount</u> they expected to be paid is reasonable (rather than merely showing that they reasonably expected to be paid something) improperly combines those two elements.   (Omnibus Objection at 29).   However, Judge Smith did not fault the Plaintiffs for failing to allege the reasonable value of their services.   Instead, consistent with New Jersey law, he required them to show that their expectation of compensation was reasonable.

In the run-of-the-mill quantum meruit claim, the plaintiff has been paid nothing for its services.   In those cases, the plaintiff need only allege a reasonable expectation of *some* payment in order to state a claim.   But in the unusual circumstances presented here – *i.e.*, where the Plaintiffs have been paid the amounts they knew the Defendants were willing to pay, but seek additional compensation – they must show that their expectation of compensation was reasonable as to this additional amount.   As to both scenarios, the underlying requirement is the same:   The Plaintiffs must show a reasonable expectation of compensation as to the amount they now seek to recover.

<u>Kentucky</u>

Judge Smith held that under Kentucky law, a plaintiff seeking to recover in quantum meruit must allege that it had provided services to the defendant, rather than merely conferring a

---

[11] *See, e.g., Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (N.J. 2002) (listing, as elements of a quantum meruit claim, "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.").

benefit on the defendant.   (June 3 Report at 32).   Because the Kentucky Plaintiffs had not done

so, Judge Smith recommended dismissal.   (June 3 at 32).

The Kentucky Plaintiffs argue that Kentucky law does not require that the services at issue

be requested by the defendant, but Judge Smith never suggested anything to the contrary.   They

also argue that services may be provided to more than one entity at the same time, but again, this

does not contradict any point made by Judge Smith.

The Kentucky Plaintiffs' main argument is based on the case of *Appalachian Regional

Healthcare v. Coventry Health and Life Ins. Co*., 2013 WL 1314154 (E.D. Ky March 28, 2013).

In that case, the plaintiff hospital, Appalachian Regional Healthcare ("ARH"), sought to recover in

quantum meruit from the defendant, Coventry Health and Life Ins. Co. ("Coventry").   Coventry

was a managed care organization that had contracted with the state of Kentucky to provide health

care services to Medicaid patients.   *Id.* at *1.   ARH argued that in those instances when Coventry

was obligated (pursuant to its contract with the state) to authorize treatment of one of its members

at ARH, ARH should be able to recover from Coventry the reasonable value of its services under

the doctrine of quantum meruit.   *Id.* at *3.   (Coventry sought to limit ARH's recovery to the

amount specified in Coventry's contract with the state: 90 percent of the figure listed in the

Medicaid fee schedule.   *Id.* at *2.)   After finding that ARH was not bound to the amount

specified in Coventry's state contract because it was not a party to it, the court held that ARH was

entitled to proceed in quantum meruit:

> If ARH provides health services to a Coventry member on an out-of-
> network basis, it is entitled to recover from Coventry the reasonable
> value of those services.   The services provided unquestionably have
> value to the member/patient.   Federal and state law prohibit a
> provider from charging a Medicaid enrollee for services covered by
> an MCO plan.   See 907 KAR 17:005; 42 C.F.R. § 438.106(c).
> ARH has only Coventry to look to for reimbursement for healthcare
> services provided to Coventry members.   Coventry is paid by the

> state to make healthcare services available to its members.
> Accordingly, Coventry should be required to pay providers who
> fulfill that obligation.   The services would be received by the
> members.   Coventry also should know that healthcare services are
> not free and that providers expect to be paid.   If ARH is not
> reimbursed for the reasonable value of the services it provides,
> Coventry or any other MCO receiving out-of-network services
> would be unjustly enriched.   Thus, all prongs of the quantum meruit
> analysis are satisfied.

*Id*. at *4.

The Plaintiffs argue that the instant situation is analogous to the situation in *Appalachian Health Care*, with themselves in the role of ARH, providing services to the Defendant's members/insureds, for whose repairs the Defendants are contractually obligated to pay. (Omnibus Objection at 33).   Because services provided to members were sufficient to support quantum meruit recovery in *Appalachian Heath Care*, Plaintiffs argue, the same should be true in the instant case.

However, despite quoting the applicable Kentucky law as to quantum meruit, *id.* at *3, the *Appalachian Heath Care* court never explicitly addressed the requirement that a plaintiff must establish that it provided services (rather than just a benefit) to the one from whom quantum meruit recovery is sought.   Thus, the Court cannot conclude from this case that the requirement no longer exists, or that it is satisfied whenever a service provider does work for someone insured by the entity from whom payment is being sought.   In addition, one significant distinction between *Appalachian Heath Care* and the instant case should be noted:   ARH was prohibited by statute from attempting to collect from the individuals to whom it had provided services – *i.e.*, the Medicaid patients – leaving Coventry as the only possible source of recovery.   The Kentucky Plaintiffs have not alleged that they face any such legal impediment with regard to the individuals whose cars they repaired.

--------------------------

<u>Washington</u>

Relying on the case of *Young v. Young*, 131 P.3d 1258 (Wash. 2008), Judge Smith held that under Washington law, quantum meruit is the method for recovery for services provided under a contract implied in fact, and that one of the elements of a contract implied in fact is that the defendant must have requested the services.   (June 3 Report at 32).   Because the Washington Plaintiffs had not alleged that the Washington Defendants requested their work, Judge Smith recommended dismissal of the their quantum meruit claim.   (June 3 Report at 32).

The Plaintiffs argue that this conclusion was erroneous, and that, despite the Washington Supreme Court's decision in *Young*, there is no requirement under Washington law that the a defendant request the services of the quantum meruit plaintiff.   The Plaintiffs cite two inferior appellate cases allegedly supporting this proposition.   However, one predates *Young* – *Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12 (Wa.App. 1991) – and the other – *Groom, Inc. v. Kabrick*, 2009 WL 690632 (Wa.App. 2009) – simply quotes the elements of a quantum meruit claim from *Bailie Communications*, without addressing *Young* or the issue of whether the defendant must have requested the services at issue to permit recovery in quantum meruit.   The Washington Plaintiffs' quantum meruit claim will be dismissed for failing to allege, as required by *Young*, that the services at issue were requested by the Defendants.

<u>Virginia</u>

Judge Smith found that Virginia law recognized two different types of quantum meruit claims.   The first, exemplified by the case of *Centex Constr. v. Acstar Ins. Co.*, 448 F.Supp.2d 697, 708 (E.D. Va. 2006), largely mirrors unjust enrichment claims and requires a showing of

> (1) a benefit conferred by the plaintiff on the defendant; (2) the defendant's knowledge of the conferring of the benefit; and (3) acceptance or retention of the benefit under circumstances that would make it unjust to retain it without paying for its value.

As for the second type, the plaintiff must show

> that "(i) he rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant." *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992).

(June 3 Report at 33).

Judge Smith found that the Virginia Plaintiffs had failed to state a claim for the first type of quantum meruit claim for the same reason they had failed to state a claim for unjust enrichment: because they had not alleged facts showing that it would be unjust to deny them compensation for any unrequested benefits that they conferred on the Defendants.   (June 3 Report at 33).   As to the second type, he found that the Virginia Plaintiffs had not stated a claim because they had not pled that any Defendant requested the services provided by the Plaintiff.   (June 3 Report at 33).

The Virginia Plaintiffs argue that they have adequately pled "unjust retention" and thereby stated a claim for the first type of quantum meruit claims.   (Omnibus Objection at 37). In support, they point to seven paragraphs from their complaint.   However, upon review of the cited paragraphs, the Court finds that the conclusory statements they contain are insufficient to show that it would be unjust to allow the Defendants to retain any benefit that might have been conferred on them.

The Virginia Plaintiffs also argue that, contrary to the Fourth Circuit's holding in *Raymond, Colesar, Glaspy & Huss*, there is no requirement under Virginia law that a quantum meruit plaintiff show that its services were requested by the defendant.   (Omnibus Objection at 38).   However, the Virginia Plaintiffs are unable to cite any cases rejecting (or even questioning) the *Raymond, Colesar, Glaspy & Huss* decision, which was issued 23 years ago.   The Virginia Plaintiffs do cite four quantum meruit cases that do not list, among their elements, a requirement

that the defendant have requested the plaintiff's services.[12]   Upon review of those cases, however, the Court finds that they are of no assistance to the Plaintiffs as they are examples of the first type of quantum meruit claim identified by Judge Smith – *i.e,*, the unjust enrichment type.   The elements they recite are identical to the elements described in *Centex Construction*, the case cited by Judge Smith.   (June 3 Report at 32-33).   (In fact, *Gutterman Iron* and *R.M. Harrison* cite *Centex Construction* for the elements of a quantum meruit claim.)   Even if the Virginia Plaintiffs are correct about the absence of any requirement that the Defendants have requested their services, their quantum meruit claims fail under the four cases they cite for the reasons already outlined by Judge Smith in regard the first type of quantum meruit cases.

### c.  Tortious Interference

In his Report, Judge Smith noted the difference between the laws of these 14 states with respect to the level of specificity required in pleading a tortious interference claim.   For example, Arizona, Michigan and Illinois allow a plaintiff to state a claim for tortious interference with a prospective contractual relationship based on interference with an identifiable class of customers; whereas Washington and Alabama require identifiable third parties.   (June 3 Report at 38 in Case No. 6:14-md-2557).   In any event, Judge Smith concluded that the Plaintiffs' claim of tortious interference must fail under a Rule 8(a) analysis, because they attribute allegations of wrongdoing collectively to every Defendant.   (June 3 Report at 39 in Case No. 6:14-md-2557).

In their objection, Plaintiffs contend that group pleading is acceptable for practical purposes in instances where each defendant has engaged in the same activity.   In support of this

---

[12] The cited cases are *Franconia Two, LP v. Omniguru Sys.*, 82 Va. Cir. 256, 261 (Va. Cir. Ct. 2011); *EDI Precast, LLC v. Mid-Atlantic Precast, LLC*, 2012 U.S. Dist. LEXIS 85119 (W.D. Va. June 20, 2012); *Gutterman Iron & Metal Corp. v. Figg Bridge Developers, L.L.C.*, 82 Va. Cir. 304, 306 (Va. Cir. Ct. 2011); and *R. M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 405 (Va. Cir. Ct. 2008).

proposition, they cite a pre-*Iqbal* case, *Crow v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) which applied an outdated notice pleading standard that is no longer applicable.   Plaintiffs also reference *EEOC v. Gargiulo, Inc.*, 2006 WL 752825 (M.D. Fla. March 22, 2006).   But in that case, the court said that "plaintiff cannot simply lump its individual assertions together in a group pleading," and required plaintiff to replead.   *Id.* at *2.

In short, Plaintiffs have no support for their continued insistence on pleading tortious interference on a group basis, and this Court has consistently ruled that group pleading will not suffice in this context.   *See, e.g., Brewer Body Shop v. State Farm*, Case No. 6:14-cv-6002, Doc. 84 at 2.   ("A general allegation that some unidentified defendants – or all defendants – interfered with some unidentified customers of some unnamed plaintiff does not satisfy the requirement of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).   Accordingly, the tortious interference claims will be dismissed.[13]

### d.   Michigan Insufficient Payment Claim

Plaintiffs' final argument contests dismissal of a claim asserted in the Michigan case that Defendants breached a legal obligation to pay for repairs.   Judge Smith recommended the dismissal of this claim on the grounds that the Plaintiffs had not identified the source of the (alleged) obligation to pay.   (June 3 Report at 46).   The Michigan Plaintiffs now argue that the partial payment of a disputed debt (*i.e.*, Defendants' payment of the repair cost agreed to between Plaintiffs and their customers) constitutes an admission by Defendants that they have a duty to pay the entire debt (*i.e.*, the amount paid originally paid by the Defendants plus the additional amount

---

[13]  Plaintiffs do not contest Judge Smith's analysis of the law in Michigan and Alabama, which specifically reject group pleading.

claimed by Plaintiffs as reasonable value).   (Omnibus Objection at 43-44).   The cases cited by Plaintiffs do not support this proposition.

The first case cited by the Michigan Plaintiffs, *Miner v. Lorman*, 22 N.W. 265 (Mich. 1885), is an action for account stated rather than "insufficient payment" or however the Plaintiffs would describe the cause of action they are attempting to assert.   *Id.* at 265.   In *Miner*, the Michigan Supreme Court held that partial payment of a disputed debt operated as an acknowledgement of the debt and, more importantly, as a waiver of any right to take advantage of the statute of limitations.   *Id.* at 266.   The *Miner* Court did not hold that such a payment was sufficient, on its own, to impose a duty to pay the remainder of the disputed obligation or to support a free-standing cause of action for "insufficient payment".

The other two cases cited by the Michigan plaintiffs – *Yeiter v. Knights of St. Casimir Aid Soc'y*, 461 Mich. 493 (Mich. 2000) and *Alpena Friend of the Court ex rel. Paul v. Durecki*, 195 Mich. App. 635 (Mich. Ct. App. 1992) – are also statute of limitations cases, in which partial payments restarted the running of the limitations period but did not impose any obligation on the part of the Defendant that had not previously existed.

**V.     Defendants' Objections**

The GEICO Defendants object to three aspects of the June 3 Report, arguing that (1) it contains *dicta* that could allow group pleading of the tortious interference claim; (2) it contains *dicta* suggesting that fraud need not be pled with particularity; and (3) the Oregon Unfair Trade Practices Act claim should be dismissed with prejudice for lack of standing.   (Doc. 204 at 2 in Case No. 6:14-md-2557).   Certain Defendants joined in GEICO's objections.   (Doc. 141, 142 in Case No. 6:14-cv-6014).   Defendant American National Property & Casualty Co. also objects to the *dicta* suggesting that Plaintiff could "defeat a motion to dismiss the tortious interference

claims solely by alleging an improper purpose." (Doc. 143 in Case No. 6:14-cv-6014). The Plaintiffs have not responded to any of these objections, which are therefore deemed unopposed.

With respect to the allegedly objectionable *dicta*, the Defendants' concerns are noted. However, as the language at issue did not affect the result of the June 3 Report, the Court finds no reason to determine whether those concerns are warranted. Should a future opinion turn on these points, the Defendants may reassert their objections.

The GEICO Defendants' contention that the Oregon Unfair Trade Practices Act ("OUTPA") claim should be dismissed with prejudice relies on a series of federal court decisions holding that only "consumers" have standing to proceed under OUTPA. (June 3 Report at 53-54). In declining to accept this contention, Judge Smith explained at some length his concerns regarding1 the federal courts' interpretation of the word "people" to mean only "consumer" under OUTPA. (June 3 Report at 56). However, the Court notes that no state court in Oregon has reached a similar conclusion and, more importantly, the Plaintiffs did not respond in opposition to GEICO's objection. Accordingly, the OUTPA claim will be dismissed with prejudice.

**VI.    Conclusion**

For the reasons stated, Plaintiffs' omnibus objection to Magistrate's Report and Recommendation is overruled. The R&R is confirmed and adopted as part of this Order, except insofar as it recommended that the OUTPA claim be dismissed without prejudice. Separate orders will be entered in each of these cases disposing of the pertinent pending motions.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 17, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party