## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**A & E AUTO BODY, INC. et al.,**  **Plaintiffs**

v.

**21st CENTURY CENTENNIAL**
**INSURANCE COMPANY, et al.,**  **Defendants**

Case No.: 6:14-md-2557-Orl-31TBS
ALL CASES

### MOTION FOR ISSUANCE OF
### SUBPOENA DUCES TECUM TO NON-PARTY

Come Now, Plaintiffs in the above-captioned multidistrict litigation and move this Court, , for issuance of a subpoena duces tecum to non-parties GoDaddy.com, LLC., and Google, Inc., and in support thereof, state the following to the Court:

### GODADDY.COM, LLC

1.   On Wednesday, 11 February, 2015, news network CNN aired a report on the Anderson Cooper 360° program.  The program was critical of insurers and specifically referenced steering several times.  As the Court will recall, steering is the industry term given to the practice of insurance companies directing consumers to particular collision repair shops and is a substantive issue in contest in the current litigation.

2.   On Saturday, 21 February, 2015, hundreds of Plaintiffs around the country began receiving calls from an individual who identified himself as "Grant" and indicated he was associated with CNN.  "Grant" asked the Plaintiffs to send him an email with their respective thoughts on the issue of steering due to the substantial mixed feedback from repair shops they had been receiving

Exhibit "1"

as a result of the Anderson Cooper program. Grant further directed that written responses should be emailed to "Grant@CNNFollowUp.com."

3. Plaintiffs in Florida, Mississippi, Louisiana, Pennsylvania, Utah, Indiana, Alabama, Virginia, Illinois, California, Tennessee and Washington, among others, were all called by "Grant."

4. The telephone number which showed on caller ID systems varied but research conducted by Plaintiffs' counsel shows the numbers are "spoofed," running through Google.[1]

5. Going to the domain identified by "Grant," CNNFollowUp.com automatically forwarded traffic to the legitimate CNN web site. "CNNFollowUp.com" never contained any content of its own, just the forwarding. However, Plaintiffs' counsel has conferred with the producers of the Anderson Cooper 360° program and confirmed no such person as "Grant" is working on any follow up story on behalf of CNN, nor was any such telephone campaign authorized or initiated by CNN.

6. ICANN, the International Corporation for Assigned Numbers and Names is the nonprofit organization responsible for the coordination of maintenance and methodology of several databases of unique identifiers related to the namespaces of the Internet, and ensuring the network's stable and secure operation. Upon inquiry, ICANN identified the registrar of "CNNFollowUp.com" as GoDaddy.com, LLC. ICANN further identified the administrator contact, registrant contact, and tech contact as private registration and refers further queries to Domains by Proxy, LLC. Domains by Proxy, LLC, is a subsidiary company of GoDaddy.com, LLC.

---

[1] In some states, for instance, the number which displayed on caller ID was 503.622.9159 which belongs to a rental vacation property.

7. Per ICANN and additional research, the domain "CNNFollowUp.com" was created on 20 February, 2015, just one day before the calls to Plaintiffs commenced. As of 27 February, 2015, the website has been closed, approximately one week after its creation. The IPv4 address of the web site is 184.168.192.92 TTL 599 with the rname dns.jomax.net.

8. Registration of "CNNFollowUp.com" was obtained by the unidentified registrant for one year.

9. In summary, the facts regarding this contact are:

- A sham website was created by a person(s) or entity(ies) utilizing a proxy to prevent easily identifying the creator;

- One day after the sham website was created, an individual calling himself "Grant" began telephoning Plaintiffs and falsely indicated to call recipients he was associated with CNN performing research for a follow-up story to the Anderson Cooper 360° CNN report;

- "Grant" solicited written statements from the Plaintiffs on steering, and directed written statements be submitted via electronic mail sent to Grant@CNNFollowUp.com, the sham website domain;

- CNN has confirmed it did not authorize or initiate the telephone survey blitz and no one named Grant is working on a follow-up story on CNN's behalf;

- The information sought by "Grant" is directly related to an issue in controversy in this litigation.

10. There is no question, given the facts above, that the request for written statements on an issue in controversy in this litigation was not initiated by CNN or any other legitimate news outlet. This is particularly highlighted by the lengths to which "Grant" and "CNNFollowUp.Com" went to remain anonymous and unidentifiable and the one-week existence of the website.

11. The Plaintiffs reasonably believe that, given the manner in which they were contacted, the subject matter of the contact, the false statements and misrepresentations made during the contact

and effort to obtain written statements from the Plaintiffs, the probability this sham effort was conducted by or at the direction of one of the Defendants is substantial. There is simply no rational reason why a person(s) or entity other than a Defendant would go to the trouble and expense of the scheme described above.

## GOOGLE, INC.

12. Very few of the Plaintiff recipients of calls from "Grant" submitted an email response as the caller requested. When this attempt failed, Plaintiffs were contacted, again soliciting email contact, by another fraudulent caller.

13. On Thursday, 5 March, 2015 through Saturday, 7 March, 2015, hundreds of Plaintiff body shops around the country were contacted by telephone by a man identifying himself as "Tom Maple." The caller stated he was visiting town and had experienced a fender bender and asked if the shop could repair the damage before he left. The caller began reciting a call back telephone number but a very loud background noise obscured it. The caller also left the email address of tommaple123@gmail.com.

14. The majority of the messages were left between 7:00 p.m. and 10:00 p.m., on Saturday, 7 March, 2015. None of the calls were made during the course of business hours, only after the normal close of business.

15. The message left for each contacted Plaintiff was identical, including the conveniently timed background noise which obscured the purported call-back number. The email address, tommaple123@gmail.com was very clear, however, leaving it the only method by which a call recipient could contact the purported potential customer.

16. Shops in Virginia, Pennsylvania, Utah, Indiana, Michigan, Louisiana, California, Tennessee, Florida and Mississippi, among others, were contacted by "Tom Maple."

17. As a first point, unless Mr. Maple is driving an extremely fast vehicle and is an exceptionally unlucky driver, it is highly unlikely a legitimate caller was able to traverse the United States and get in hundreds of fender benders in forty-eight hours.

18. Second, the telephone number displayed on the body shop call recipients' caller ID listed the telephone number of the caller as 949.930.9554. This number traces to an actual telephone in Irvine, California. However, additional research shows the calls themselves displaying that telephone number were transmitted via voice-over-internet protocols "hijacked" from Expedia.com. The caller ID number was "spoofed."

19. This was the second attempt in less than two weeks from anonymous sources to solicit electronic mail from the Plaintiffs in this litigation.

20. In summary, the relevant facts with respect to this contact are:

- Plaintiffs were contacted after regular business hours by way of voicemail message by an individual who identified himself as "Tom Maple," requesting the body shop call recipient send an email about a potential repair.

- The calls were made to Plaintiffs between Thursday and Saturday, 5-7 March, 2015, with the vast bulk of the calls being made between 7:00 pm and 10:00 pm.

- The contents of the calls was identical, including a convenient background noise which obscured the call-back number left by "Tom Maple," leaving a Plaintiff the only contact manner via email.

- The calls were demonstrably fraudulent in content.

- The caller caused a "spoofed" telephone number from Irvine, California to appear on the recipient's caller ID system.

- The calls were routed through hijacked VoIP services belonging to Expedia.com.

- This was the second attempt in two weeks to trick or manipulate Plaintiffs into making email contact with anonymous sources.

21. It is beyond question that a represented party may not be directly contacted regarding any issue in litigation without consent of representation. Diligent research has not located any authority or ethical opinion within or without the State of Florida which permits this, either directly or indirectly through the use of a non-party or sham, such as "Grant" or "Tom Maple."

22. In the present case, hundreds of Plaintiffs were contacted and asked in the first instance to submit written statements on a subject which is central to several of the Plaintiffs' claims. This contact was deliberate, performed through subterfuge and intentional misrepresentation so as to hide the identity of the solicitor.

23. GoDaddy.com, LLC, is the only entity which can identify the actual owners of the website and domain CNNFollowUp.com and thus the originator of the sham solicitations for written statements from the Plaintiffs.

24. In the second attempt, Plaintiffs were contacted by a sham prospective customer with an identical message, again soliciting email contact from the Plaintiffs. This attempt did not solicit information regarding litigation directly, but a response to any email innocently sent by a Plaintiff could very well contain a worm, Trojan Horse or other malware allowing "Tom Maple" access to the Plaintiff's hard drive.

25. In addition to improper contact directed at Plaintiffs, "Grant" and "Tom Maple" have violated federal law. 47 USCS § 227(e)(1) prohibits any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value.[2]

26. Violation of this law carries both civil and criminal penalties.

27. Plaintiffs request issuance of a subpoena duces tecum to GoDaddy.com, LLC, to compel production of records identifying the registrants and originators of CNNFollowUp.com, as well as contact information for those person(s) or entities and the use made of the sham website and domain name (See Exhibit "A" hereto).

28. Plaintiffs further request issuance of a subpoena duces tecum to Google, Inc., as the service provider of "gmail.com" electronic mail addresses, to compel production of records providing any information regarding the holder of email address [tommaple123@gmail.com](mailto:tommaple123@gmail.com), including the date the email account was opened, subscriber's name, address, records of session times and durations, telephone or instrument number, or other subscriber number or identity, any and all forwarding of email direction, user connection logs and similar data (see Exhibit "B" hereto).

29. Plaintiffs understand these requests are somewhat unusual as discovery has not yet commenced in this cause. However, the perpetrator(s) of these sham and criminal contacts with Plaintiffs have gone to considerable trouble and expense to hide their identities, mislead the call

---

[2] There are exemptions to this prohibition relevant to law enforcement activities and execution of court orders, neither of which are applicable to this matter.

recipients, solicit information directly relevant to an issue in controversy in this litigation and solicit email contact through false means.

30. The Court has the inherent authority to control the proceedings before it to ensure substantial justice is done. In the present case, the Plaintiffs have been improperly contact twice, both times attempting to persuade a Plaintiff to make contact via email and once to contact via email with statements regarding an issue in controversy.

31. As Plaintiffs have assured undersigned counsel they have not received such calls prior to the initiation of this litigation, Plaintiffs respectfully submit the above facts provide a sufficient basis for issuance of the requested subpoenas so as to safeguard the integrity of the proceedings.

Respectfully submitted, this the 9th day of March, 2015.

**A & E AUTO BODY, INC., et al.**

/s/ *Allison P. Fry*

JOHN ARTHUR EAVES, JR.
ALLISON P. FRY,

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:	601.355.7961
Facsimile:	601.355.0530
JohnJr@eaveslaw.com
Allison@eaveslaw.com
Will@eaveslaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Motion for Extension of Time was filed electronically on 9 March, 2015. This filing will be served upon all ECF-registered counsel by operation of the Court's electronic filing system. Parties and counsel may access this filing through the Court's system.

*s/ Allison P. Fry*
Allison P. Fry

JOHN ARTHUR EAVES,
ATTORNEYS AT LAW
101 N. State Street Jackson, MS 39201
601.355.7961 Tel
601.355.0530

# EXHIBIT "1" TO SUBPOENA DUCES TECUM
## ISSUED TO GODADDY.COM

**Pursuant** to the Subpoena Duces Tecum to which this Exhibit is attached, you are required to produce the following:

For the domain name(s) cnnfollowup.com and/or dns.jomax.net and/or IP v4 address 184.168.192.92 TTL 599 hosted and/or supported by GoDaddy.com:

- Any and all registration agreements associated with the domain name(s) and/or IP addresses listed above;

- Name, telephone number, physical address, mailing address and electronic mail address of the person(s) and/or entities listed or known to be registrants of the above-noted domain names and/or IP addresses;

- Listing of any and all status changes associated with the domain name(s) and/or IP addresses listed above, including any and all documents memorializing status changes;

- Copies of any and all customer service records, e.g., notes of telephone conversations, memoranda, notes or other

-

**EXHIBIT A TO THIRD PARTY SUBPOENA**

Pursuant to the foregoing subpoena, YOU are required to produce by _____, ___, 2015, the documents requested herein.

## I. DEFINITIONS

As used in this Attachment, the following terms and phrases shall have the following meanings:

"YOU," "YOUR," "Google, Inc.," shall mean Google, Inc, and all of its subsidiaries, affiliates, and divisions, and all owners, officers, directors, employees, and agents of any of the foregoing.

"Google, Inc.," shall mean Google, Inc., Inc., and any of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, parents, and their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants or other persons occupying similar positions or performing similar functions.

"COMMUNICATION(S)" shall mean all occasions on which information was conveyed from one person or entity to another, either: (a) through a document; or (b) verbally, either in person or by telephone (including phone messages or alerts); or (c) by means of any other mechanical or electronic device.

"DOCUMENTS" is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all non-identical copies of both sides thereof. "DOCUMENTS" specifically includes, but is not limited to, any responsive advertising materials developed or created, in whole or in part, by YOU. "DOCUMENTS" also specifically includes, but is not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations,

interpretations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated, any other data compilations from which information can be obtained, translated if necessary, into a usable form and any other documents.  For purposes of this request, any document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to production.  In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all non-identical copies thereof.  Any document, record, graph, chart, film or photograph originally produced in color must be provided in color.

## II. DOCUMENT PRODUCTION REQUESTS

1. For the electronic mail address tommaple123@gmail.com, hosted and/or supported by YOU, any and all DOCUMENTS, whether maintained by YOU or a third party to which you have access, including but not limited to any of the following information:

   a. The subscriber's name, street address, telephone number(s) and email addresses associated with tommaple123@gmail.com;

b. Records of the opening of the email address tommaple123@gmail.com, including the date the account/address was opened, the date the account/address was closed;

c. Records of session times and durations associated with tommaple123@gmail.com;

d. customer service records, (*e.g.*, notes, memoranda, or other recordings of correspondence with associated person(s) and/or entities);

e. telephone or instrument numbers used, utilized by or associated with tommaple123@gmail.com;

f. any and all data or metadata showing user connection accessing the email address tommaple123@gmail.com, including but not limited to user connection logs;

g. any and all data or metadata showing forwarding of contents of the email address mailbox of tommaple123@gmail.com;

h. tommaple123@gmail.com  telephone or instrument number, or other subscriber number or identity;

2. For the email address tommaple123@gmail.com hosted and/or supported by YOU, identify any and all databases, whether maintained by YOU or a third party to which you have access, that are used to store information, DOCUMENTS and/or COMMUNICATION for the email address tommaple123@gmail.com hosted and/or supported by YOU.

3. With respect to each database identified in response to Request No.1, above, DOCUMENTS that describe:

its contents and general functions;

its structure (*e.g.* hierarchical, relational, flat file, VSAM, etc.);

      all tables and/or files in the database and the information in each table or file;

      each brand, type of computer and operating system that processes and/or accesses the database;

      each item or variable contained in the database together with all data dictionaries and record layouts which describe the items or variables in each such database, including any documentation which provides information relating to interpreting each coded field or variable in the database;

      whether any proprietary software is required to process or access the information in the database and, if so, what proprietary software is required; and

      the time period for which the database has been maintained.

    1. For any information requested in Request Nos. 1-2 that is archived, DOCUMENTS that describe:

  the information that is archived;

  the form in which the information is archived (i.e. hard copy files or electronic data);

  where the archived information is located;

  the time period of the archived information; and

  the custodian(s) of the archived information.